COLT and another *against* EVES:

IN ERROR.

The amendments of the constitution of the *United States* were not intended to limit or controul the proceedings of the state courts.

The provision in our city charters, that the jury shall be taken from the free-men of the city, and not from the body of the court, is not repugnant to the 21st section of the 1st article of the constitution of this state, declaring that the right of trial by jury shall remain inviolate.

Where a duty is required by statute to be performed on a certain day, and the object contemplated by the legislature cannot otherwise be carried into effect, the time prescribed must be considered imperative; but if there is nothing indicating that the exact time is essential, it is to be considered as directory.

Therefore, where a city charter required, that a certain number of jurors should be chosen on the 1st *Monday* of *July*, and they were not chosen until the 8th of *August*, it was held, that this provision was directory, and a jury empannelled from the jurors so chosen, was a legal jury.

Where *A* was chosen a juror, and his name put into the box and drawn from it, but by mistake of the sheriff, *B* was summoned, and the mistake being discovered, *B* was dismissed, and *A* summoned; it was held, that *A* was a competent juror.

Where a community of design is established, the acts of each of the parties and their declarations, at the time of prosecuting those acts, are evidence against each other.

Therefore, where *A*, the plaintiff in an execution against *D*, and *B*, the officer who executed it, entered together the house in which *C* resided, with intent to remove *C* therefrom, by virtue of such process; it was held, that the declarations of *B*, acting under the direction of *A*, though not made in *A's* presence, were evidence against him.

*A* instituted a summary process to obtain the possession of a leased tene-ment, under the statute for that purpose, by a complaint against *D*, dated the 24th of *May*, on which a citation was issued, and served on *D*, requi-ring his appearance on the 30th of *May*. The citation was served, but nothing further was done until the 30th of *July*, when a *venire* was issued, requiring the attendance of the jury on the 1st of *August*. The jury at.

New-Haven,
July, 1837.

Colt
v.
Eves.

tended on the 2nd of *August*, and found a verdict for *A* to recover possession. An execution was thereupon issued, purporting to be founded on a judgment rendered on the 2nd of *August*, directing the officer to cause *A* to become possessed of the premises, by putting out *D* and all others, and putting *A* into peaceable possession. In an action of trespass, brought by *C*, not holding under, or deriving title from, *A* or *D*, against *A*, and *B*, the officer who served the execution, for removing *C* and her effects, by virtue of such execution, it was held, 1. that these proceedings were entirely irregular, and afforded no justification to *A* ; 2. that the clause in the execution requiring the officer to put out *D and all others*, was inoperative as against those not holding under, or deriving title from, *A* or *D ;* and consequently, the officer, not acting under process, regular on its face, was not protected ; 3. that trespass was the proper remedy.

THIS was an action of trespass *vi et armis* and *de bonis asportatis*, brought by *Hannah Eves*, against *Anson T. Colt* and *Silas Mix*, before the city court of the city of *New-Haven*. The defendants pleaded, severally, the general issue, with notice of special matter in justification. The cause was tried before that court, *October* term, 1836, when the plaintiff obtained a verdict against both the defendants. They then filed a bill of exceptions, and brought a writ of error, on which the points in this case arise.

On the first *Monday* of *July*, 1834, the mayor, aldermen and common council men of the city of *New-Haven* chose 144 freemen of the city to serve as jurors, and put their names into the box provided for that purpose, as required by the charter. (*a*) On the first *Monday* of *July*, in the years 1835 and 1836, they omitted to perform this duty ; but did it, at a meeting called for that purpose, on the 8th of *August*, 1836. The persons last chosen were the same, with the exception of twelve, as those chosen for jurors in *July*, 1834 ; that number having, in the mean time, died or removed from the city. The names of all the jurors summoned to attend the court, had been duly drawn from the box, except that of *Lewis Hotchkiss*, whose name had never been placed in the box, but he had been summoned by mistake, instead of *Lucius Hotchkiss*, who was one of the twelve. *Lewis Hotchkiss* was thereupon excused, by the court ; and *Lucius Hotchkiss* was then, by

(*a*) The provision of the charter here referred to, is in these words : " The said mayor, aldermen and common council shall, on the first *Monday* of *July*, annually, meet, and shall then choose one hundred and forty-four freemen of said city to serve as jurors at said city court, and shall return the names of said jurors," &c.   *Stat.* 157. (ed. 1808.)

*New-Haven,*
July, 1837.

Colt
*v.*
Eves.

order of the court, summoned to attend as a juror, and did at-
tend.   The defendants objected to the whole of the jurors so
drawn and summoned, on the ground that they were not
chosen to be put in the jury-box on the first *Monday* of *July*,
1836 ; and on the ground that they were an unconstitutional
jury, because they were all from the freemen of the city, and
not from the body of the county ; and on the ground of the
mistake of the city sheriff in summoning, in the first instance,
*Lewis Hotchkiss*, instead of *Lucius Hotchkiss*.   The court
over-ruled these objections, and admitted the jurors thus drawn,
summoned and appearing, to be empannelled and sworn in
the cause.

On the trial, the plaintiff introduced evidence to prove, and
claimed that she had proved, all the facts alleged in the decla-
ration ; and particularly, that on the evening of the 2nd of
*August*, 1836, and on the morning of the following day,
while the plaintiff was in the quiet and peaceable possession of
a part of the *Northerly* half of a dwelling-house in said city,
where she had resided, with a Mrs. *Collins*, since the 30th of
*May*, preceding, the defendants entered upon the premises to-
gether, in a forcible manner, and, under colour of executing
a writ of execution, purporting to have been issued by a justice
of the peace, upon a summary process in favour of the defend-
ant *Mix*, against one *Samuel B. Durand*, and committed,
in concert with each other, the acts complained of in the decla-
ration.   It was proved, that the defendant *Colt*, in forcibly
removing the plaintiff and her furniture from her residence,
under such process, acted by the orders and directions of the
defendant *Mix*, who remained upon the premises with him,
on the night when the forcible entry was made, and went
away with him, when he left the premises, and returned the
next morning, and remained at the house until the plaintiff and
her furniture were removed.   There was no evidence to prove,
nor was it claimed, that *Colt* used any more force than was
necessary for the removal of the plaintiff and her effects, as
directed by *Mix ;* or that *Mix* ever laid his hand on the
plaintiff.   The defendants were informed, by the plaintiff and
Mrs. *Collins*, at the time of their entry, that the plaintiff and
Mrs. *Collins* were occupying the premises, by the permission
and as tenants of *William L. Clark ;* and that they did not
occupy under *Durand ; Clark* claiming to be the owner of

an undivided interest in the premises, as a tenant in common. Before the 30th of *May*, *Mix* had been informed, that *Durand* had moved from the premises; and there was no evidence to prove, that there was any privity in fact between the plaintiff or Mrs. *Collins* and *Durand*, in regard to the premises, or the occupation thereof; nor was there any evidence to shew, that *Durand* had been in the possession of any part of the premises subsequent to the 25th of *May*; or that he had ever occupied them exclusively, as the tenant of the defendant *Mix*; but, on the contrary, this was denied by the plaintiff.

The defendants introduced testimony to prove, and claimed that they had proved, that no more force was used, on the occasion, than was necessary to remove the plaintiff and her furniture from the house; and as a justification for the use of so much force as was necessary for this purpose, they offered in evidence certain proceedings in a summary process to recover the possession of lands and houses, under the statute, (*tit.* 53. *c.* 3.) consisting of the complaint of *Mix* to *Joseph Bennett*, Esq., a justice of the peace, a summons to *Durand*, a *venire* for six jurors, the verdict of those jurors and a judgment and execution thereon, together with the return of *Colt* as sheriff's deputy, on the execution.

The complaint was dated the 24th of *May*, 1836, and stated, that on the 1st of *May*, 1835, *Mix* demised and leased to *Samuel B. Durand*, one half of the dwelling-house in question, and the land on which it stands, for the term of one year from that date; that *Durand* did not elect to surrender the premises at the end of the year, on the 1st of *May*, 1836; and that he had ever since, and at all times, neglected and refused to surrender the premises to the plaintiff, or to quit the same; and that *Mix* had given *Durand* thirty days notice to quit, according to the statute; praying that a jury of six disinterested freeholders might be summoned to inquire into the truth of the facts stated, and that such facts being found true, judgment might be rendered for the complainant to recover possession of the premises, with his costs, &c.

A citation was thereupon issued to *Durand*, to appear before Justice *Bennett*, on the 30th of *May*, 1836, and answer the complaint, and be dealt with according to law; which citation was served by the defendant *Colt*. A *venire* was also issued, requiring the attendance of six disinterested freeholders, at the

New-Haven,
July, 1837.

Colt
v.
Eves.

same time and place, to enquire into the truth of the facts stated in the complaint. On the 30th of *July*, another *venire* was issued, requiring the attendance of the jury, for the same purpose, on the 1st of *August*. This *venire* was served, by the defendant *Colt*, who stated in his return, that he summoned the jury to attend the trial, which was continued to the 2nd day of *August*. On the day last-mentioned, the jury met, and after being sworn, found the following verdict : " In this case, the jury find, that the said *Samuel B. Durand* is the lessee of the complainant ; that notice in writing, agreeably to the statute, has been given him to quit ; that he holds over his lease ; and also, that he holds possession since the time at or before which he was notified to quit, as the complainant has alleged ; and therefore, the jury find for the complainant to recover possession of the described land and half dwelling-house, with costs."

Justice *Bennett* thereupon issued an execution, purporting to be founded on a judgment rendered by him on the 2nd of *August*, commanding the officer, that " he cause the said *Silas Mix* to become possessed of said described premises, by putting the said *Samuel B. Durand* and all others out of the possession thereof, and putting the said *Silas Mix* into [the quiet and peaceable possession thereof, by delivering the same to him by turf and twig."

The officer, who was the defendant *Colt*, made his return on the execution, that " by virtue thereof, he removed said *Samuel B. Durand* and all others, together with their furniture and effects, out of and from the premises, using no more force than was necessary to perform the same ; and that he restored and put in peaceable and quiet possession of the premises said *Silas Mix*, by delivering the same to him by turf and twig."

The defendants also offered these proceedings as evidence of the truth of the facts alleged in the complaint, and found by the verdict of the jury.

To the admission of these proceedings, for any of the purposes for which they were offered, the plaintiff objected, on the ground that they were irregular and invalid, as against *Durand ;* and that if otherwise, the plaintiff being neither a party nor privy, could not be affected thereby ; and consequent-

New-Haven, ly, that the execution furnished no justification for the acts
July, 1837. complained of.

Colt
v.
Eves.

The defendants claimed, that these proceedings were admissible as evidence against the plaintiff; that *Durand* was the tenant of the defendant *Mix*, of the premises; that he continued in possession up to the time of rendering the verdict and issuing the execution; and that the possession of the plaintiff was in fact under *Durand* and a continuance of his possession.

To repel the claim, or any inference, that there was any privity between the plaintiff and *Durand*, the plaintiff offered evidence tending to prove, that *Durand* had never had the exclusive occupation of the premises, as the tenant of *Mix*, but had occupied the same, by the permission of, and in common with, *Clark*, who claimed to be the owner of an undivided interest therein, as tenant in common thereof, and had never been out of the possession of the same; that *Durand* was not in fact in the occupation of any part thereof, at the time the acts complained of were committed, or at the time of the rendering of the verdict and the issuing of the execution, or at any time during the occupation thereof by the plaintiff and Mrs. *Collins*. For the same purpose, the plaintiff, in connexion with proof of the possession and claim of *Clark*, offered evidence tending to prove title in *Clark* to an undivided interest in fee-simple, as tenant in common of the premises, during the period aforesaid; that under claim of such title, he occupied and demised the premises, as owner, and in no other character whatever.

The defendants objected to the evidence so offered, on the ground that the title of *Clark* was not in issue; and that the proceedings before Justice *Bennett* were conclusive evidence against the plaintiff of all the facts which they were offered to prove.

The court admitted the evidence so offered by the plaintiff, for the purpose for which it was offered, and for that purpose only.

The defendants claimed, that all persons having title or not, who came into the premises, during the pendency of the summary process, without the consent of the complainant, so far as the possession of the same was concerned, came in by collusion implied by law, with the defendant in such process.

It having been proved and admitted, that the defendants entered upon the premises together, *Colt* being directed by *Mix*, with the intent to remove the plaintiff and her property there- from, against her consent, claiming to act under the process against *Durand*, and to use so much force as should be ne- cessary therefor; the plaintiff offered testimony to prove, that while *Colt* and *Mix* were upon the premises, for the pur- pose of forcibly removing her and her property, the defendant *Mix* stated to the plaintiff and Mrs. *Collins*, that unless they would say, that they would hold possession for him until the next morning, their effects should be put out that night; and that, on their declining so to do, *Colt* said to them, that he should follow the directions of *Mix*.

To this testimony, the defendants objected, on the ground that it was not proved, that the declaration of *Colt* was made in the hearing of *Mix;* but the court admitted the testimony offered.

The defendants claimed that the court should charge the jury, that said execution was a justification to the defendants for all the acts done under, and claimed to be by virtue of, the same; that the complaint and proceedings on the summary process were conclusive evidence against the plaintiff of all the facts therein alleged and purporting to be found by the jury, and of the fact that the plaintiff was in possession of the prem- ises under *Durand*, and was privy to him. The defendants further claimed, that the court should charge the jury, that said execution was good upon the face of it; and that if it was wrongfully executed upon the plaintiff, by removing her and her property from the premises, as claimed by her, still that she could not recover of the defendants in the action of trespass, but that they were liable, if at all, only in an action on the case.

The court charged the jury, that although the proceedings before the justice and the execution issued thereon were valid against *Durand*, and would constitute a justification to the defendants for the removal of him from the premises, and all others entering or claiming under him, or who were in any way privy to him; yet, that they did not justify the defendant in removing the plaintiff and her property, if the jury should find, that the plaintiff had entered and occupied the premises as tenant to *Clark*, in the manner and under the circumstan-

ces claimed to be proved by her, and not under *Durand*, or in any way privy to him: that such complaint and proceedings did not, as claimed by the defendants, conclude the plaintiff, nor prevent her from disproving any of the facts therein alleged, or purporting to be found by the verdict, nor from showing that she had entered and continued to occupy the premises under *Clark*, and not under *Durand*, or in any way privy to him: that the legal title of the premises was not in question, in this action; and that the evidence exhibited by the plaintiff in relation thereto, had not been offered or received for the purpose of establishing the title of *Clark* to the premises, but, in common with the evidence of his claim and possession, and that of the plaintiff under him.

To shew the character of such possession, and thereby repel the claim of the defendants that the plaintiff was occupying the premises under *Durand*, and was privy to him, it was claimed, by the defendants, that the court should charge the jury, that the complaint and proceedings on the summary process against *Durand*, were conclusive evidence against the plaintiff, that the defendant *Mix* had ousted *Clark* of the possession of the premises, as tenant in common; and therefore, that *Clark* could not have been in possession thereof, at the time of the entry of the plaintiff. The court refused so to charge the jury, but charged them against the claim of the defendants.

A verdict being given for the plaintiff, and judgment rendered thereon, the defendants brought a writ of error in the superior court; which was reserved for the advice of this court.

*Mix*, for the plaintiffs in error, contended, 1. That the panel of jurors should have been set aside. First, because it was not taken from the body of the county. It was, therefore, in contravention of the constitution of this state, (*art.* 1. *s.* 21.) and of the amendments of the constitution of the *United States. Art.* 7. In *Beers* v. *Beers*, 4 *Conn. Rep.* 535. 540., it was decided, that the act enlarging the jurisdiction of a justice of the peace, was not within the prohibition of the constitution, on the ground that the *liberty of appeal* preserved the right of trial by jury inviolate. Secondly, because *Lucius Hotchkiss* should not have been empannelled. Thirdly, because the jurors were not chosen, by the city authority, at the

time required by the charter. *Stat.* 117. *tit.* 15. *s.* 18.    This charter is in derogation of common right, and should be strictly construed, like a particular custom, or the custom of *London.* 1 *Bla. Com.* 75., 6, 7.    All the powers a corporation possesses, are such as are specifically granted ; and it is confined to the mode of acting or contracting prescribed by the charter.    *The New-York Firemen Insurance Company* v. *Ely* & al., 5 *Conn. Rep.* 560. 568.    1 *Sw. Dig.* 70.    The *specific* grant of certain powers, is the implied prohibition of other powers.    5 *Conn. Rep.* 572. and cases cited *ibid.*    How is it in the analogous case of electing jurors in towns, under the general state law ?    Can they elect jurors but in the month of *January?*    Can representatives to the General Assembly be chosen on any other day than that prescribed by law ?    At common law, corporations are dissolved, unless the head officer is chosen on the day appointed in the charter, or established by prescription.    1 *Bla. Com.* 485.    *The King* v. *Passmore,* 3 *Term Rep.* 199.

2. That the city court erred in rejecting the record and execution offered in evidence.    The case is identical with that of *Watson* v. *Watson* & al. 9 *Conn. Rep.* 140.    This was lawful process, lawfully pursued : it operated on the thing described.

3. That the city court erred in deciding there could be no ouster, and in not leaving it to the jury.    1 *Sw. Dig.* 102., 3.

4. That the court erred in admitting the declarations of *Colt,* when the other defendant was not present.

*Baldwin,* for the defendant in error.

WILLIAMS, Ch. J.    Various objections were made to the proceedings in the cause, commencing with the empannelling of the jury and ending with the charge of the court.

It is said, that the jury being taken from the city, and not from the body of the county, although in conformity to the city charter, is not organized constitutionally, within the 7th section of the amendment of the constitution of the *United States,* and the 21st section of the bill of rights of this state, by which provision is made that the right of trial by jury shall be preserved inviolate.

So far as it regards the constitution of the *United States,* it

*New-Haven,*
*July, 1837.*

Colt
*v.*
Eves.

is not necessary to examine what effect it could have upon this question ; because it has been well settled, that the amendments to that instrument were never intended to limit the power or to controul the proceedings of the state courts. *State* v. *Phelps,* superior court, *Hartford* county, *September* term, 1816. *Jackson* d. *Wood* & al. v. *Wood,* 2 *Cowen* 819. n. *Murphy* v. *The People,* 2 *Cowen* 815. *Livingston* v. *Mayor of New-York,* 8 *Wend.* 85. 100. *Barron* v. *Mayor of the City of Baltimore,* 7 *Pet.* 250. Lessee of *Livingston* & al. v. *Moore* & al. 7 *Pet.* 551.

As to our constitution ; the city charter under which the jury were empannelled, was granted in 1784, and provided, that jurors for the city courts should be taken from the freemen of the city. The objection is, that they are not taken from the body of the county, but from a particular section ; and so the trial by jury is not preserved inviolate. To preserve the trial by jury inviolate, cannot mean, that we must pursue the exact course taken in *England* to collect jurors. If it does, what time is to be selected ; for they have been constantly altering the qualifications, the exemptions and the mode of summoning jurors ? Besides, the common law required merely, that the jury should come from the *vicinage.* The statute of 4 & 5 *Ann.* requires, that the jury should be taken from the body of the county. The most general rule, says Lord *Coke,* is, that every trial shall be of that town, parish or hamlet, or place known out of the town within the record, within which the matter of fact issuable is alleged, which is most certain and nearest thereunto, the inhabitants whereof may have the better and more certain knowledge of the fact. When a parish is alleged within a city, there, without question, the visne shall come out of the parish. *Co. Litt.* 125. And if there were not as many as four from the hundred, it was good cause of challenge. Note 191., by *Hargrave,* to *Co. Litt.* 125. *a.* The strict principle of the common law seems to have been adopted in the city charter ; and a great inconvenience to our remote citizens is thereby avoided.

Were this, however, an innovation upon the common law, it would not follow that the trial by jury was not preserved inviolate. It never could have been intended to tie up the hands of the legislature so that no regulations of the trial by jury could be made. If it is so, it would be difficult to see how

the defendants could justify their proceedings, under a process with a jury of six; or how a recent act of our legislature could be vindicated, declaring that any electors may be jurors. And this court, upon a former occasion, has said, that within the reasonable intendment of that instrument, if the trial by jury be not impaired, although it may be subject to new modes, and even rendered more expensive, if the public interest demanded such an alteration, it would not be a violation of the constitution. *Beers* v. *Beers*, 4 *Conn. Rep.* 535. 539.

Again, this mode of forming a city jury had existed nearly forty years, when the constitution was adopted. That instrument declares, that the right of trial by jury shall be preserved inviolate; and is it contended, that this instrument, so carefully securing the existing rights of trial by jury, necessarily destroys the right as it then existed in our cities? The court cannot accede to this construction.

Another objection was made to the jurors, that as the court of common council did not nominate them upon the day fixed by law for that purpose, they had no right to make such nomination at a future day. The corporation, it is said, possesses no powers but such as are specially granted, and such as are necessary to carry into effect the powers so granted. *The People* v. *The Utica Insurance Company*, 15 *Johns. Rep.* 358. 383. One of the privileges given to this corporation, not to the court of common council merely, is, that they shall have a city court, who may try civil causes by jury. The court are to be elected, by the freemen of the city; the jurors, by the court of common council. However much the corporation ought to suffer for their own default, it would be a very harsh construction, to say, that by the neglect of their officers, they should forfeit their charter. This is not claimed; but it is said, that they shall not have a jury for that year. Suppose the common council neglected this duty *intentionally;* would not a *mandamus* lie to compel them to discharge it? 10 *Conn. Rep.* 208. And would it be a good answer by them, that the time had elapsed? May they, by their negligence or by design, thus deprive the public of the right of a court within the city? For others without the city may need the benefit of this tribunal, as well as those within the city. Is it not incident to the enjoyment of the privileges conferred by this charter, that there should be a jury? Is it not necessary for the administration of justice according to the charter? To effect this, it is made the

New-Haven,
July, 1837.

Colt
v.
Eves.

duty of the court of common council to nominate these jurors; and they are directed when to do it.

It is said, that the law is as imperative as to the time, as it is as to the duty; and it is analogous to the nomination of jurors in the towns in the month of *January,* for each year; which, it is said, cannot be done at any other time. There, it is not confined to a single day, but may be done during the month. This fact, with the penalty for non-compliance, has been sufficient to prevent any question under this law. An omission by one or two towns would not prevent the accustomed administration of justice in the county; and it cannot be supposed such an omission could be general.

There is one case decided by this court, not alluded to in the argument, which seems to bear upon the point under consideration. Our statute requires the assessment list to be made up and an abstract left with the town-clerk, by the 1st of *December* in each year. In the case referred to, the abstract was not left with the town-clerk until the 20th of *December.* It was there contended, as it is here, that the statute, as to time, was merely directory. The court, however, were of opinion, that as the object evidently was, to give to the citizens opportunity to examine the assessment, so that they might have opportunity to appeal, they must be allowed the time fixed by the statute; and therefore held, that the statute on this point must be considered imperative. But they further held, that although another part of the same statute required the town-clerk to return an abstract of such list to the comptroller, by the 1st of *March,* under a penalty of 15 dollars, an omission to return such abstract by the 1st of *March*, would not have the same effect. Of course, this was considered directory merely. *The Thames Manufacturing Company* v. *Lathrop* & al. 7 *Conn. Rep.* 550. 556. The principle there assumed seems to be, that where the object contemplated by the legislature could not be carried into effect, by another construction, there the time prescribed must be considered as imperative; but where there is nothing indicating that the exact time was essential, it should be considered as directory. The object, in the case before us, was, to have jurors at all times when wanted. So the abstract of the lists ought to be with the comptroller, for his use, when wanted. But as there seems no particular reason to be assigned, why the particular day designated by the law should be suffered to be passed over, more in one case than in the oth-

New-Haven,
July, 1837.

Colt
v.
Eves.

er, we think the requisitions in this respect should be subject to the same construction, and both be considered as directory.

Some decisions in the state of *New-York*, also, confirm this view of the subject. Their statute requires a sheriff, within twenty days after notice of his election, to give certain bonds. In the case of *The People* v. *Holly*, 12 *Wend.* 486. notice was given to the sheriff of his election on the 1st of *December ;* and he did not give the bond required until the 1st of *January.* The court held the time to be merely directory, and that he did not thereby lose his office. The militia law of that state makes it the duty of certain commanding officers to appoint a brigade court martial, on or before the 1st day of *June,* in each year. In the case of *The People* v. *Allen,* 6 *Wend.* 481., the commanding officer omitted to appoint the court martial until the     day of *July ;* and it was contended, that the acts of the court martial so appointed after the time prescribed by law, were void. But the court held, that the general rule was, that where a statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others, it would be considered as directory merely, unless the nature of the act so to be performed, or the language used by the legislature, shews, that the designation of the time was intended as a limitation of the power of the officer. There, a power was given to a military officer to appoint a court martial, on or before the 1st of *June.* Here, the mayor and common council are to meet and appoint jurors on the 1st *Monday* of *July.* In each case, public officers are to perform official acts regarding the rights and duties of others ; one regarding a military, and the other a civil tribunal to administer justice. There is nothing in the nature of the power given, or in the manner of giving it, that justifies the inference, that the time was intended as a limitation more in the one case than in the other.

We think, therefore, that we are bound to say, that the regular administration of justice in our cities, is not to be defeated, by an omission of this kind : that the time fixed for selecting jurors, is merely directory : and therefore, that this objection cannot prevail.

As to the objection to the individual juror, *Lucius Hotchkiss.* It seems his name was duly drawn from the box, and entered in the *venire ;* but the sheriff, by mistake, summoned *Lewis Hotchkiss.* The mistake being discovered, the officer is di-

rected to, and actually does summon the man whom he was first sent to summon.    A bare statement of the facts seems to us a sufficient answer to this objection.

The next class of exceptions is to the opinion of the court in admitting and excluding evidence.

It was proved and admitted, that the defendant, *Mix*, was plaintiff in the execution against *Durand ;* and that the defendant, *Colt*, was the officer who executed it; that they entered together into the premises, with intent to remove the plaintiff, by virtue of the process against *Durand ;* and that *Colt* acted under the direction of *Mix.*    It having been proved, that *Mix* told the occupants of the house, that unless they would consent to hold as tenants under him, they should be put out, that night ;    on their declining, *Colt* said, that he should follow the directions of *Mix.*    This reply was objected to ;    because it did not appear, that *Mix* was present ;    but it was admitted by the court.    And we think, it was properly admitted.    It having been proved, that these persons acted in concert, the declarations, as well as the acts, of one, must affect the other.    The rule is well settled, that where a community of design is established, the acts of each of the parties, and their declarations at the time of prosecuting those acts, are evidence against each other.    2 *Stark. Ev.* 403.    1 *East's Pl. Cr.* 97.

The defendants offered as a justification, certain proceedings before Justice *Bennett*, *viz.* a complaint by *Mix* against one *Durand*, under the statute to enable lessors, by a summary process, to recover premises let from their lessees, showing that *Mix* was owner of the house in question, and leased it to *Durand* to the 1st of *May*, 1836 ;    that notice to quit had been duly given, and he held over ;    praying process, dated 24th of *May*, 1836 ;    on which due process issued, citing *Durand* to appear on the 30th of *May*, and also a jury ;    which was duly served.    On the 30th of *July*, Justice *Bennett* issued another summons for a jury to appear on the 1st of *August*, to inquire into the facts stated in the above complaint ;    which summons was served, by the defendant, *Colt ;*    and the jury convened on the 2nd day of *August*, to which time *Colt*, in his return, says, the cause was continued.    The jury found, that *Durand* was lessee of *Mix ;*    that notice to quit was given, and he held over, as claimed ;    and for *Mix* to recover possession, &c.    The justice thereupon issued execution as upon a judgment before

New-Haven,
July, 1837.

Colt
v.
Eves.

him of the 2nd of *August*, for possession ; and directed the officer to cause said *Mix* to become possessed of the premises, by putting out said *Durand* and all others, and putting *Mix* into peaceable possession ; which the officer returns he did do.    It was objected, that these proceedings were irregular, and even as against *Durand* could have no effect ; and at all events, could not affect the plaintiff, who was not party or privy to them.    They were finally read, subject to the future disposition of the court.    To meet this evidence, the plaintiff then offered testimony to show, that *Durand* never had the exclusive possession of the premises as tenant of *Mix*, but by permission of and in common with, one *Clark*, who claimed to be tenant in common thereof, and who had never been out of possession ; under whom the plaintiff entered, on the 3rd of *May*, 1836, as tenant, without any knowledge of, or privity with *Durand*, who had not been in the occupation since the plaintiff entered.    And to show the character of her possession, she offered to prove, that *Clark* was owner in fee of an undivided estate in the premises in common ;  to which evidence the defendant objected, on the ground that *Clark's* title was not in issue, and that the proceedings before Justice *Bennett* were conclusive against the plaintiff, upon all the facts which they purported to prove.

As the objection to the testimony offered by the plaintiff is founded upon the effect of the proceedings before Justice *Bennett*, the disposition of the question regarding that process will settle the other ;   and as the same questions are made to the charge of the court, it may perhaps be as well to consider the evidence as all before the court, and inquire what effect it ought to have ; and the case must come to the point, what effect shall the proceedings before Justice *Bennett* have upon the rights of persons not parties to them.    The plaintiff claims, that they are all void, and can have no effect whatever.    The defendants claim, that they are valid, at least so far as to protect those who act under them from an action of trespass.

There are here two defendants :  one of them the actor in those proceedings, the other an officer acting under the execution ;  and as they have severed in their defence, these cases demand separate examinations.    For although an officer may be justified, by a legal warrant or execution, yet the party must shew, not only a warrant, but the judgment upon which

it is founded.   *Turner* v. *Fellgate,* 1 *Lev.* 95.   *Moravia* v. *Sloper, Willes,* 34.

Is the defendant *Mix* justified, by those proceedings? This summary process was dated the 24th of *May,* and was returnable the 30th of *May.* After service, nothing is heard of it. It does not seem, that the parties appeared; that there was any court; on the return day, all are silent; and the proceedings appear to be ended. And yet on the 30th of *July* following, without any new process, Justice *Bennett* issues his precept to the sheriff to call a jury to enquire as to a lease from *Mix* to *Durand,* notice to quit and holding over, &c. and to meet on the 1st day of *August.* On the 2nd day of *August,* to which the sheriff in his return says the cause was continued, the jury met, and found a verdict for the plaintiff. Whether the parties, or either of them, were present, or whether any evidence was laid before the jury, no where appears; or whether even the justice was there, does not appear, except by the execution; nor is there any other evidence that a judgment was rendered by him. Upon a verdict so obtained, the magistrate issues an execution, directing that not only *Durand,* but all other persons, are to be put out of possession of that property of which *Mix* claimed to be the owner on the 24th of *May* preceding, and which the plaintiff claims she was in possession of, by permission of *Clark,* who was tenant in common of the premises from the said 30th of *May* to the time of this execution.

From this brief statement it appears, that on the 30th of *July,* there was no complaint pending before Justice *Bennett.* The return day of a former complaint had passed, and the complainant had suffered it to sleep more than two months; and the county court might as well summon a jury to try the causes discontinued at the former term, as could this magistrate issue this *venire;* more especially, as he did not summon in any party who was to be affected by it. Notice to the party is an indispensable requisite, founded upon the principles of natural justice, as well as express statute. 4 *Bla. Com.* 280. *Chase* v. *Hathaway,* 14 *Mass. Rep.* 222, 224. Nor is there any record that any judgment was rendered, even that the plaintiff should recover possession. We need go no further to declare these proceedings entirely irregular. The magistrate had no authority to issue an execution, without complaint, without a hearing and without a judgment. The party then who pro-

*New-Haven,*
July, 1837.

Colt
*v.*
Eves.

cured it, or acted under it, cannot be justified by it. *Parsons* v. *Lloyd*, 3 *Wils.* 345.

It is contended, however, that trespass will not lie; and *Watson* v. *Watson* & al. 9 *Conn. Rep.* 141. is cited. That was a case where the proceedings were regular, but the process was abused. Here, the proceedings are irregular; and in such case, trespass always lies. The defendant *Mix* has, therefore, no claim for a new trial.

As it respects the sheriff; it is said, that he had in his hands an execution valid upon its face, which it was his duty to execute, without enquiring into the proceedings upon which it was founded ; and the question arises, was this process of that character? Had Justice *Bennett* a right to command all persons to be removed from these premises?

Our law has carefully reserved the trial of the title of land for the decision of the higher courts, so that even in an action of trespass, where title is pleaded before a justice, his jurisdiction ceases ; and the county courts have not final jurisdiction in the most trifling suits of that kind. It was found, that tenants sometimes took advantage of this salutary law, to retain possession of premises they held under leases. To guard against this, the legislature, in 1806, passed the act upon which the proceedings before Justice *Bennett* were founded ; by which, a lessor, giving thirty days notice to his tenant to quit, after the expiration of his lease, might complain to a single minister of justice ; and six days after the expiration of the thirty, might bring his tenant to answer before the justice, and a jury, who are to enquire whether the tenant is lessee of the plaintiff, and holds over after his lease has expired, and after the notice to quit ; and if they so find, the justice may render judgment for the plaintiff, to recover possession of the premises and his costs, and award execution.

When we consider the summary nature of this process ; that it was brought before a single justice of the peace ; and that its effect is to turn families from their dwelling-houses, after a week's notice ; it is clear, that this power, thus conferred, is not to be extended beyond the object contemplated, unless the terms of the statute imperatively require it. The object in view, evidently, is, to restore to the plaintiff a possession, which is retained by the defendant, contrary to an express stipulation. It does not purport to affect the rights of any but those who

were parties, or derive right from the parties. It does not even require the complainant to prove his title to the property. We must then examine with care the language of the statute, to see if there is any thing, which requires a construction, that will affect the innocent as well as the guilty, those who have title as well as those who have not, and those who have no notice, as well as those who have had due notice. If the statute allows all persons to be put out of possession, by a process against any one who may have taken a lease, it may be used as an instrument of great oppression, in the hands of the malevolent. Any person, who has taken a lease from another, and is charged with notice and holding over contrary to his stipulation, may, by permitting judgment and execution against himself, furnish an instrument as operative against a stranger as himself; and thus a tenant under the real owner, or even the real owner himself, with his family, without any previous notice, may be driven from his home, and have to seek a return by the slow process of a common law suit, which, in many cases, could not furnish any thing like adequate redress.

Does the statute require such a construction? It says, indeed, that judgment must be rendered that the plaintiff recover possession of the leased premises. What possession? The possession of which he claims he is excluded, by his lessee, and those who derive title from him. Their possession is the only thing of which he complains, and for which he seeks redress. It cannot be supposed, that the law intended to give him what he did not seek, or more than he asked for. When then he is restored to the possession of which he claims to have been deprived, complete justice is done to him, and no injustice to others.

It may be said, that the words of the statute are not satisfied, unless exclusive possession is given to him; nor can he be said to have possession, unless it be exclusive. The statute does not expressly require this; and when we find the fourth section of the act extending its provision to those who derive title from the lessor or lessee, though the primary object may have been to say the process may be taken out against them or by them; perhaps also, it may be taken to mean, that persons deriving their title from the lessee, may, by process against them, be excluded from the possession. If this is a fair construction of that clause, it shews, that it was before at least

doubtful, whether even such persons would, by the general provision, have been affected, by an execution. If so, of course, others having no privity with the lessee, could not be.

New-Haven,
July, 1837.

Colt
v.
Eves.

Again, the third section provides, that all persons claiming title to the premises, shall, notwithstanding this act, or any proceedings that may have been had under it, be entitled to their remedy at law, in the same manner as if this act had not been passed. Might not, then, the owner of property, who had taken no lease from the plaintiff, and who had been turned out of possession by the execution; sustain an action of trespass, were it not for this act? And if so, do the proceedings under it, as against him, make it less a trespass? Does not this section intend to protect all persons claiming title from the operation of the other sections, and the proceedings under them? This construction will give to the statute entire operation, for all the purposes for which it was designed, while a salutary check will be imposed upon improper proceedings under it. As it respects the lessee, who is holding over, it will be an instrument of çoercion, which may be speedily called into action. As it respects all others, it will be harmless.

This execution, then, instead of commanding to put out of possession *S. Durand* and all others, should have directed to put out of possession *Durand*, or *Durand* and all others deriving title from him. The first would be certainly safe and proper ; but under the third section of the statute, he might have a right to remove others claiming under his lessee, without which the statute might be inoperative.

It may be said, how is the sheriff to know who do claim under the lessee? He must act, as in many other cases, at his peril. When reasonable doubt exists, he is not bound to proceed witnout indemnity ; and then the loss, if any occurs, will fall where it ought.

It was said, the form of execution was taken from Judge *Swift*. It is true, that form is adopted in 2 *Sw. Dig.* 781, 2. It was not, however, in pursuance of any decision of court ; nor were these forms, it is believed, collected by him in person. They cannot, therefore, be considered as authority.

We are, therefore, of opinion, that the execution purported to give an authority to the officer, which the justice could not grant; and that he must, therefore, be responsible. This being so, the evidence offered to show *Clark's* title and the plain-

*New-Haven,* tiff's entry under it, though perhaps unnecessary, was certain-
*July, 1837.* ly proper, as tending to repel any supposed privity with *Du-*
*rand.*

Colt
*v.*
Eves.

The superior court is, therefore, advised, that there is no error in the judgment of the city court.

In this opinion the other Judges concurred.

Judgment affirmed.