MARION *et al., Board of School Trustees,* V. TERRITORY *ex rel. Wilson.*

[*Opinion Filed Jan. 27, 1893.*]

1.   PETITION—*Cause of Action*—In an action by the Territory, on the relation of a resident of a ward of a city, against the members of the school board and city superintendent of schools, to compel defendants to admit relator's children to the ward school as pupils, the petition showed that while a regular term of said school was being held, relator applied to have his children, who were eligible and qualified, admittted to the school; that the application was refused by the teacher and by defendants, for the reason that his children were colored, and said school was established by the school board exclusively for white pupils. A writ of mandate, containining all the substantive averments of the petition, was duly issued. *Held,*that the petition stated a good cause of action, and a demurrer thereto and to the writ was properly overruled.

2-   PUBLIC SCHOOLS—*Separate Schools for colored children*—St. c. 79, art. 13, § 1, relating to public schools, provides that separate schools for white and colored children may be established in the Territory as follows, "and in no other way." Section 4 provides that "not more than twenty days, nor less than ten days prior to" an election to determine the question of establishing separate schools for white and colored pupils, "the county commissioners of each county shall appoint in each election precinct in their respective counties two judges and one clerk, whose duty it shall be to hold said election." Section 8 provides that "any failure to comply with any and all the provisions of this act shall render such act of establishing separate schools void, etc." *Held,* that the provision relative to the time of judges and clerks was directory only, and the fact that they were appointed 26 days prior to the election was not such failure to comply with the statute as would render the election void. Green, C. J., dissenting.

3.   SPECIAL ELECTION—*General Election*—Where a specific chapter of the statutes provides for a system of common schools, and is complete

within itself, an election held in compliance with its provisions to determine the question as to whether separate schools shall be established for colored pupils, is not invalid because not conducted as required by the statute governing general elections known as the "Australian System."

*Appeal from the District Court of Logan County, Hon. E. B. Green, Judge.*

Action by the Territory of Oklahoma, on the relation of John Wilson, against Francis E. Marion and others, members of the public school board of the city of Guthrie, and Edward L. Hallock, city superintendent of schools of the city of Guthrie, to compel the defendants to admit the relator's children as pupils to a certain ward school of said city. From a judgment for plaintiff, defendants appeal. Reversed.

*H. S. Cunningham*, for Appellants.

*Brown & Soward*, for Appellees.

The opinion of the court was delivered by

BURFORD, J. The relator John Wilson brought his action in the district court of Logan county, praying for a writ of mandate against the defendants compelling them to admit his two children, Eva aged ten years and Janetta aged nine years, as pupils in the fourth ward school of said city, the petition shows that he and his wife are residents of said ward and have been for the two years last past, that his daughters are elligible and qualified to be admitted as pupils in said school.

That a regular term of said public school was being held and taught at said school and that he had taken his two daughters to said school and applied to have them admitted and enrolled as pupils. Which application had been refused by the teacher of said school and refused and denied by the defendants, for the reason that his children were colored, and that said school was

established by the school board exclusively for white pupils.

An alternative writ of mandate was issued commending the defendants to appear and show cause why said children should not be admitted as pupils in said school.

The defendants appeared and demurred to said alternative writ, for the reason that said writ did not state facts sufficient to constitute a cause of action against the defendants.

This demurrer was overruled and exception saved. There was no error in this ruling; the complaint states a good cause of action and the writ contains all the substantive averments of the complaint.

The defendants then filed their answer.

The first paragraph is a general denial.

They next admit that they are the official school board and superintendent of the public schools of the city of Guthrie, and that they have refused the relators. children the privilege of attending the fourth ward school of said city. But they further allege that pursuant to the provisions of Art. 13 of Chap. 79 of the Statutes of Oklahoma, an election was duly held on the first Tuesday of April A. D. 1891, and at said election there was duly submitted to the qualified school electors of said county, and by them voted for or against the proposition of the maintenance of seperate school for white and colored children in said county, that returns of said election were duly made as required by law and the board of county commissioners of said county duly canvassed the said returns., and published the result in the Guthrie Daily News, and Oklahoma State Capital, news. papers published in said county. That at said election the majority of the votes cast were in favor of the establishment of seperate schools for white and colored children in said county. That the board of

county commissioners pursuant to the provisions of said statutes, levied and caused to be extended upon the tax rolls of said county, a tax of five mills upon the dollar upon all the taxable property in said county in addition to all other taxes provided for by law and that same is sufficient to maintain seperate schools in said county during the current school year.

That they have done all things necessary for the maintainance of seperate schools for the education of white and colored children, by providing suitable buildings, and furnishing them with suitable furniture and appliances and have employed competent, capable and qualified teachers for said schools.

That the whole number of schools maintained and teachers employed in said city number sixteen, thirteen of which are assigned for the use of and are attended exclusively by white pupils; and three of which are assigned to the use of and attended exclusively by colored pupils, and that all of said schools are graded according to the attainments and proficiency of said pupils. That all of said schools are located within the corporate limits of said city and are centrally and conveniently located, and all pupils white and colored have convenient access thereto. That the schools maintained by said board of education of the colored children are equal in every way to those maintained for education of white children, and that all are supplied with equal facilities for acquiring an education.

That the relator has been sending his children to one of said schools provided for colored children, and that they were not denied the privilege of the public schools of said city. But were only denied the right to attend as pupils at a school maintained exclusively for white pupils.

The relator replied to this answer by general denial.

The cause was submitted to the court for trial by

agreement of parties, and after hearing the evidence, at the request of both parties made a special finding of facts, and stated his conclusions of law therein in writing.

The finding of facts and conclusions of law, present to this court, the errors complained of.

The court found the facts to be as follows:    That the relator John Wilson is a colored man residing within the Fourth ward of the city of Guthrie; that his children are colored children and resides with him, that they were by Edward L. Hallock, superintendant of the public schools of the city of Guthrie, under the direction of the board of education, of such city denied admission into the schools of said ward for the reason that they were colored children.

That pursuant to the provision of Art. 13 of Chap. 79 of the Statutes of Oklahoma, an election was duly held on the first Tuesday of April, 1891, at which election there was duly submitted to the qualified school electors of the county of Logan the proposition of the maintenance of separate schools for white and colored children in said county; that said electors at such election voted upon such questions; that returns of such election were duly made and canvassed within the time and in the manner prescribed by law; and the result of said election was duly published as required by law; that said result showed a large majority in favor of separate schools for education of white and colored children; that the defendant school board proceeded to hire teachers and suitable buildings and to furnish the necessary equipments and furniture for the maintenance of separate schools for the education of white and colored children in said city, and at the date when the said Wilson was refused admission into the schools of the Fourth ward he was informed that his children would be admitted in the school of the proper grade

maintained in the Third ward of said city for the education of colored children, that he sent his children to said school and that at the date of this hearing they were attending the same and enjoying the privileges thereof.

That said schools maintained for the education of colored children as aforesa'd are equal in evry respect to those maintained for the education of white children, equal in the character and the qualifications of teachers, equal in the buildings furniture and appliances, equal in the grades maintained and branches taught, the colored pupils having exactly the same facilities for acquiring an education enjoyed by the white children of said city. That a tax has been levied by the county commissioners of said Logan county sufficient to provide for the maintenance of said schools.

That the said election was held under the provisions of § § 1, to 2, inclusive of Art. 13 Chap. 79, of the Statutes of Oklahoma, and no effort was made to comply with the provision of Chap. 33, of the laws of Oklahoma:

That the county commissioners in giving the notice provided for in § 4 of said Art. 13, gave twenty-six days notice instead of twenty days notice as required by the terms of said section.

Thereupon the court stated the following conclusions of law:

"1. The Legislative assembly of the Territory of Oklahoma had the power, and it was a rightful subject of legislation not inconsistent with the constitution and laws of the United States, to provide a school system of public schools for said Territory under which separate schools for the education of white and colored children might be established and maintained.

"2. The provisions of Art. 13, of Chap. 79, under which separate schools for the education of white and colored children may be established is mandatory and must be strictly complied with in the holding of the

election therein provided for in order that such separate schools may be legally established and maintained.

"3. The county commissioners of Logan county had no power or authority under § 4 of said Art. 13, to appoint the judges and clerks of said election twenty-six days prior to the election; and their failure to appoint within the time prescribed by that section rendered the election void, and no separate schools for the education of white and colored children could be established and maintained by virtue of said election.

E. B. GREEN;<br>Judge."

The defendants each excepted to the findings of facts and the several conclusions of law.

Judgment was rendered for the relator, and a peremptory writ of mandate directed to issue against the defendants.

From this judgment and order the defendants appeal to this court.

There are four assignments of error, viz:

"1. The complaint of the appellees does not state facts sufficient to constitute a cause of action.

"2. The court erred in overruling the demurrer of appellants to the alternative writ.

"3. The court erred in making its second conclusion of law upon the special findings of fact.

"4. The court erred in making its third conclusion of law stated upon the special findings of fact."

As already indicated herein, we think the complaint sufficient, and that the court below committed no error in overruling the demurrer to the alternative writ.

The third and fourth conclusions of law present the question of the effect of the election held under Art. 13, Chap. 79; Statutes of Oklahoma, and will be considered together.

The first section of said act provides:

"Separate schools for the education of white and col-

ored children may be established in the Territory as follows; *and in no other way*."

It is insisted that this section makes all the provisions of said act mandatory, and that a strict compliance with each and every step is required in order to render an election held thereunder valid.

Statutes must be construed acccording to the legislative intent in so far as the same can be determined, and according to their purpose. The purpose of this article was to provide the mode for establishing separate schools by a general election at which all qualified school electors might express their choice on such question, and to declare that separate schools shall not be established in any other way than by submitting said question to the will of the people at a general election to be held at the time fixed in the Statute. It was not intended that the words, *and in no other way.* should be limited in their application to *each* and *every* particular step provided for executing said law, but it is general in its effect and is an inhibition against establishing separate schools, by school trustees, school boards, civil townships or municipal corporations. And requiring the question of separate or mixed schools to, in every instance, be submitted to a vote of the school electors of each county, and making that result final.

Section 4, of said article 13, provides as follows:

"Not more than twenty days nor less than ten days prior to said election the county commissioners of each county shall appoint in each election precinct in their respective counties two judges and one clerk, whose duty it shall be to hold said election."

The findings of fact herein show that the county commissioners of Logan county appointed these judges and clerks twenty-six days prior to the election, and in all other particulars the election was held, the returns canvassed, the result declared and published strictly according to the terms of the statutes.

Does this irregularity of the county commissioners invalidate the election?

Section 8, of said act reads thus:

"Any failure to comply with any and all the provisions of this act, shall render such act of establishing separate schools void, and immediately all of the children of school age in such county shall be admitted to the school or schools of their respective district."

It is contended with much force that this section renders all the provisions of this act mandatory whether they are of such a character as to affect the result of an election or not, and the learned judge who tried the case below adopted this view of the case and so held. We are aware that there is some highly respectable authority in support of this construction.

But as before stated we must look to the legislative purpose and intent. It was the purpose of the legislature to submit the question of mixed or separate schools in the Territory to the school electors of each county. And this was the controlling purpose. All the details of carrying on the election are subservient to this one purpose. And this act must be so construed with this purpose in view.

McCrary, in his valuable work on elections, § 127, says:

"Irregularities which do not tend to affect results are not to defeat the will of the majority; the will of the majority is to be respected, even when irregularly expressed. Those provisions which affect the time and place of the elections, and the legal qualifications of the electors, are generally of the substance of the election. While those touching the recording and return of the legal votes received and the mode and manner of conducting the mere details of the election are directory."

And again in § 187, this author lays down this fundamental rule:

"Provisions which affect the merits of an election are mandatory—those which do not are directory."

In *Platt v. People*, 29 Ill. 72, and approved in *Berry v, Nicholson*, 102 N. C. 465, the court says:

The rules prescribed by law for conducting an election are designed chiefly to afford an opportunity for the free and fair exercise of the election franchise, and to ascertain with certainty the result; such rules are directory merely, not jurisdictional or imperative. If an an irregularity of which complaint is made be shown to have deprived no voter of his right, nor admitted a disqualified person to vote; if it cast no uncertainty upon the result, and had not been occasioned by the urgency of a party seeking to derive a benefit from it, it may well be overlooked in a case of this kind, when the only question is which vote was the greatest. The *forms* which must be observed in order to render the election valid are those which affect the *merits*."

It will not be contended that the irregularity in the appointment of the judges, in any manner or to any degree prevented a free and fair exercise of the elective franchise in this case.

It deprived no voter of any right, it did not permit any illegal voter to vote, it cast no uncertainty on the result.

It was not occasioned by the urgency of any person seeking to derive a benefit from it, and in the language of the learned Illinois court, it may well be overlooked.

In *People v. Cook*, 8 N. Y. 67, it is held that mere irregularities in the selection of election officers which do not effect the merits of the case are not to be regarded as affecting the validity of an election.

To the same effect are *Whipley v. Kune*, 12 Cal. 352; *Colt v. Eves*, 12 Conn. 243; *Dole v. Irwin*, 78 Ill. 170; *Bacon v. Malyocher*, 102 Ill. 663; *Paine v. Elections*, S. 309; *Killin v. Chapman*, 34 Cal. 635.

The rule seems to be well established that those requirements of a statute which are mandatory must be strictly observed, those which are directory need not.

Those matters are mandatory which affect the results or merits of the election, all others directory.

Then what are the mandatory requirements under the statute in question?    It is mandatory to appoint judges, for an election cannot be held without judges.

But the time in which they are to be appointed is directory, the time of their selection is not of the substance of the election.

In the absence of fraud it can in no way affect the results; The time and places of holding the election is mandatory, for, being fixed by statute, the electors must know the law and can safely rely upon the time and place fixed.    And no one has authority to change it. The returns must be canvassed and declared; the statute fixes the time in which it shall be done.

Failure to observe this time would not invalidate the election, because the time of making the returns is not of the substance and does not affect the results or merits.

In the case at bar the judges were appointed, there was no failure to act, but the board appointed the judges and clerks six days too soon.    This was an irregularity, only it was not a failure to comply with the statute, but was an act required to be done and was done, but in an irregular manner.    Such acts are not void, and an immaterial error of this kind cannot be held to vitiate the entire election and set aside the will of the voters, freely and fairly expressed and honestly determined and declared.

The purpose of the legislature, as set forth in § 8, was not to change the ordinary rules of construction, but to recognize and adopt them as they existed.

To declare that all things required which went to affect the merits or results of the election if omitted to be done should render the election void, but as to those acts which were not theretofore mandatory, but only directory, said selection does not change the rule.

An examination of, and reference to, the laws generally adopted by our first legislature supports and sustains this conclusion.

We are further supported in our view of the interpretation of this act by the provisions of § 9, which provides that:

. "Any person aggrieved by any actions on the part of a district or township school board, or board of county commissioners, in failing to comply with the provisions of this act, may have his remedy by writ of mandamus against such district or township school board, or board of county commissioners, in any court having jurisdiction."

Why the necessity for this provision? It gives the party no remedy. He had the right to this remedy before it was provided for by this section.

It is another legislative recognition of the laws of the land, and is cited in support of the interpretation we have put upon § 4. If the board of county commissioners had failed to appoint the judges and clerks not more than 20 nor less than 10 days before the election, any school elector might have had his writ of mandamus to compel them to act; this writ could not issue until they had refused or failed within the time to act, and if for a failure only. Why this remedy, if the act when done should be void? It seems clear that if the board should fail within the statutory time to make the required appointments, that a writ of mandamus might issue to compel them to appoint after the time had expired and prior to the day of election, and the irregularity of the appointments when made would not affect the validity of the election.

The power to control local affairs is, by our forms of government, largely rested in the people.

And legislatures and courts are slow to adopt any rule which tends to diminish or destroy this power, when exercised properly.

It has always been the policy of the courts in this country to give effect and validity to elections by the people, when there has been a reasonably fair attempt

to comply with the requirements of law, and no fraud has been practiced or advantage acquired.

Mere technical irregularities and omissions in the performance of ministerial duties by election officers should not be permitted to defeat the popular will, in any case when there has been an attempt to conform to the requirements of the statute and no injury has resulted to any one.

The act of the board of county commissioners in this case in appointing the election judges prematurely did not affect the merits or validity of said election.

It is contended by counsel for the relator that said election was illegal because not held under the provisions of the general election law, known as the Australian System. (Chap. 33, Oklahoma Statutes.)

Chapter 79, is a law complete within itself, and provides for a system of common schools.

The board of school officers, the means of raising and expending school revenues, and the terms of office, times and manner of electing school officers, (Art. 13), is a part of this chapter and must be construed with reference to its other provisions; it is a part of the school system adopted, and controls absolutely in school matters. The general law provides a system of elections for all purposes other than that provided for in the school law.

The two are not in conflict, but are independent statutes, each for a particular purpose. The school law may be defective in some particulars, but that question is not for the courts to deal with.

The election was held under its school law, and there is no reason why it should not be held legal and valid.

Under the facts as found by the court the defendants were entitled to judgment in their favor.

The judgment of the court is reversed, with directions to restate his conclusions of law, numbered second, and

third, in accordance with this opinion, and render judgment thereon for the defendants.

Judgment reversed, at costs of the relator, Wilson.

Clark, J., concurs.

Dissenting opinion by

GREEN, C. J.: I do not concur in the reasoning, or conclusion, of the majority of the court, and shall briefly state the grounds of my dissent. The question involved in this case is not one of public policy, but simply one of law; and the policy or impolicy of a legislative act is not a question for the courts, but a question for the legislature. Whether it is better to maintain a system of separate schools for white and colored children, or to maintain a system of mixed schools, are questions with which the courts have nothing to do, and should be left entirely to the legislative branch of the government.

It is well said in the majority opinion, that the legislative intent must control in the construction of the act; and so it must; but that intent must be looked for in the act itself and not in the regions of speculation and conjecture outside the act.

Section 4 of the act provides for the appointment of the officers of election as follows:

"Not more than twenty days nor less than ten days prior to said election the county commissioners of each county shall appoint in each election precinct in their respective counties two judges and one clerk, whose duty it shall be hold said election: Provided, That at first election, herein provided for, the election precincts be the same as those designated by the Governor in his proclamation calling an election for delegates to congress upon November fourth, one thousand eight hundred and ninety."

It is conceded that the judges and clerks of the election, at which the people voted for the maintenance of separate schools for white and colored children, were

appointed twenty-six days prior to the election; but it is held by the majority of the court that the provision of § 4, *supra*, that "not more than twenty days nor less than ten days prior to said election the county commissioners of each county shall appoint, in each election precinct in their respective counties, two judges, and one clerk, whose duties shall be to hold said election," is merely directory, and not mandatory; and so it would be if the legislature itself has not made it mandatory.

By § 8 of the act it is provided:

"Any failure to comply with any and all the provisions of this act, shall render such act of establishing separate schools void, and immediately all the children of school age in such county shall be admitted to the school or schools of their respective district."

Can language be clearer than this with reference to the legislative intent? And we have seen that legislative intent must govern in the construction of the act; and so the majority opinion holds. And the legislature has here declared that *any failure to comply with any and all the provisions of this act* shall render the act of establishing separate schools void. If it is possible for a legislature by the use of words, to declare the provisions of an act mandatory, it has been done in this instance; and the authorities cited in the majority opinion, while good law, have no application in this case.

In McCrary on Elections, an authority cited in the opinion of the majority of the court, the author states the rule of law, which is in point in the case, in the following clear language:

"While it is well settled, that mere irregularity on the part of election officers, on their omission to observe some merely directory provisions of the law, will not vitiate the poll, there has been some confusion and conflict as to what we are to understand by irregularities, and as to what provisions of statute are to be regarded as directory and what mandatory.

"A few remarks upon this subject will be proper in

this connection. The language of the statute to be construed must be consulted and followed. If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute, must so hold, whether the particular act in question goes to the merits, or affects the result of the election, or not.

"Such a statute is imperative, and all considerations touching its policy or impolicy, must be addressed to the legislature." (McCrary on Elections, § 190.)

That the legislative will, when clearly expressed, must prevail, is axiomatic in the law; and when the legislature declares, as in this instance, that *any failure* to comply with *any and all the provisions* of the act shall render the establishment of separate schools void, and it is conceded that some of the provisions of the act have not been complied with, it does not lie with the courts to say that the will of the legislature shall not be respected, and that separate schools shall be established whether the provisions of the act have been. complied with or not.