## CAPITAL TRACTION COMPANY *v.* HOF.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF CO-
LUMBIA.

No. 108. Argued January 5, 6, 1899. — Decided April 11, 1899.

This court has jurisdiction to review by writ of error, under the act of
February 9, 1893, c. 74, § 8, a judgment of the Court of Appeals of the
District of Columbia, maintaining the validity of proceedings for a trial
by a jury before a justice of peace, which were sought to be set aside
on the ground that the act of Congress authorizing such a trial was un-
constitutional.

The provisions of the Constitution of the United States securing the right
of trial by jury, whether in civil or in criminal cases, are applicable to
the District of Columbia.

By the Seventh Amendment to the Constitution, either party to an action
at law (as distinguished from suits in equity and in admiralty) in a
court of the United States, where the value in controversy exceeds
twenty dollars, has the right to a trial by jury.

By the Seventh Amendment to the Constitution, when a trial by jury has
been had in an action at law, in a court either of the United States or of
a State, the facts there tried and decided cannot be reëxamined in any
court of the United States otherwise than according to the rules of the
common law of England, that is to say, upon a new trial, either granted
by the court in which the first trial was had or to which the record was
returnable, or ordered by an appellate court for error in law.

VOL. CLXXIV—1                                                    1

"Trial by jury," in the primary and usual sense of the term at the common law and in the American constitutions, is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them upon the law and to advise them upon the facts, and (except upon acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence.

A trial of a civil action, before a justice of the peace of the District of Columbia, by a jury of twelve men, as permitted by the acts of Congress, without requiring him to superintend the course of the trial or to instruct the jury in matter of law, or authorizing him to arrest judgment upon their verdict, or to set it aside for any cause whatever, is not a trial by jury, in the sense of the common law and of the Constitution, and does not prevent facts so tried from being tried anew by a common law jury in an appellate court.

Congress, in the exercise of its general and exclusive power of legislation over the District of Columbia, may provide for the trial of civil causes of moderate amount before a justice of the peace, or, in his presence, by a jury of twelve, or of any less number, allowing to either party, where the value in controversy exceeds twenty dollars, the right to appeal from the judgment of the justice of the peace to a court of record, and to have a trial by jury in that court.

The appeal authorized by Congress from judgments of a justice of the peace in the District of Columbia to a court of record, "in all cases where the debt or damage doth exceed the sum of five dollars," includes cases of judgments entered upon the verdict of a jury.

The right of trial by jury, secured by the Seventh Amendment to the Constitution, is not infringed by the act of Congress of February 19, 1895, c. 100, enlarging the jurisdiction of a justice of the peace in the District of Columbia to three hundred dollars, and requiring every appellant from his judgment to enter into an undertaking, with surety, to pay and satisfy the final judgment of the appellate court.

THE case is stated in the opinion of the court.

*Mr. R. Ross Perry* for plaintiff in error.

*Mr. Alexander Wolf* for defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court.

On September 8, 1896, the Capital Traction Company, a street railway corporation in the District of Columbia, presented to the Supreme Court of the District a petition for a writ of certiorari to a justice of the peace to prevent a civil

action to recover damages in the sum of $300 from being tried by a jury before him.

The petition for a writ of certiorari alleged that Charles Hof, on August 17, 1896, caused a summons to be issued by Lewis I. O'Neal, Esquire, one of the justices of the peace in and for the District of Columbia, summoning the Capital Traction Company to appear before him on August 20, 1896, "to answer unto the complaint of Charles Hof in a plea of damage of $300," and the matter was postponed until September 8, on which day, after the company had put in its plea, and issue had been joined thereon, the attorney for Hof demanded of the justice of the peace that the action should be tried by a jury, and thereupon the justice of the peace issued a *venire* to a constable, commanding him to summon twelve jurors to appear before said justice on September 10; that the petitioner was advised that such a demand for the so-called jury was founded upon sections 1009–1016 of the Revised Statutes of the District of Columbia, and was intended to subject the petitioner, without appeal, to a form of trial before a justice of the peace, unknown to the common law, and, as the petitioner was advised, illegal and unconstitutional; that the petitioner was informed and believed that Hof's claim was for damages sustained by him through its negligence, while he was a passenger on one of its cars; and that it had a good defence on the merits to his claim, and sought a fair opportunity to make such defence before an impartial tribunal, and was ready and willing to give any security that might be required for the prompt payment of any final judgment which might be pronounced against it in due course of law.

The petition further averred that the only method in which Hof's claim against the petitioner could be tried by a jury according to the common law and the Constitution was by removing his suit from the justice of the peace into the Supreme Court of the District of Columbia; that if this was not done, the petitioner would be deprived of its constitutional right to a trial by jury, and would be in danger of being deprived of its property without due process of law, and would

be denied the equal protection of the laws; and that the amount claimed by Hof was within the jurisdiction of that court.

Wherefore the petitioner prayed that a writ of certiorari might be issued to the justice of the peace to remove Hof's claim into that court for trial according to the course of the common law, upon such terms as to security for costs and damages as the court might think proper; and for such other and further relief as the petitioner might be entitled to.

The Supreme Court of the District of Columbia granted a writ of certiorari to the justice of the peace, as prayed for; and the justice of the peace, in his return thereto, set forth the proceedings before him in the action of Hof against the Capital Traction Company, showing the issue and return of the summons to the defendant, its oral plea of not guilty, the plaintiff's joinder of issue and demand of a jury, and the stay of further proceedings by the writ of certiorari.

On October 6, 1896, the Supreme Court of the District of Columbia overruled a motion of Hof to quash the writ of certiorari; and entered an order quashing all proceedings before the justice of the peace after issue joined. 24 Wash. Law Rep. 646. Hof appealed to the Court of Appeals of the District of Columbia, which on February 17, 1897, reversed that order, and remanded the case with directions to quash the writ of certiorari. 10 App. D. C. 205. The Capital Traction Company thereupon sued out a writ of error from this court, under the act of February 9, 1893, c. 74, § 8. 27 Stat. 436.

The petition for a writ of certiorari presents for determination a serious and important question of the validity, as well as the interpretation and effect, of the legislation of Congress conferring upon justices of the peace in the District of Columbia jurisdiction in civil actions in which the matter in dispute exceeds twenty dollars in value, and providing for a trial by a jury before the justice of the peace, an appeal from his judgment to the Supreme Court of the District of Columbia, and a trial by jury, at the request of either party, in the appellate court. This court, therefore, has jurisdiction of the writ of error. *Baltimore & Potomac Railroad* v. *Hopkins*,

130 U. S. 210, 224; *Parsons* v. *District of Columbia*, 170 U. S. 45.

The Court of Appeals was unanimous in maintaining the validity of the proceedings looking to a trial by a jury before the justice of the peace.  But there was a difference of opinion between the two associate justices and the chief justice upon the question whether such a trial before the justice of the peace would be a trial by jury, according to the common law and the Constitution; as well as upon the question whether the trial by jury, allowed by Congress in the Supreme Court of the District, upon appeal from the judgment of the justice of the peace, and upon the condition of giving bond to pay the final judgment of the appellate court, satisfied the requirements of the Constitution.

I. The Congress of the United States, being empowered by the Constitution " to exercise exclusive legislation in all cases whatsoever " over the seat of the National Government, has the entire control over the District of Columbia for every purpose of government, national or local.  It may exercise within the District all legislative powers that the legislature of a State might exercise within the State; and may vest and distribute the judicial authority in and among courts and magistrates, and regulate judicial proceedings before them, as it may think fit, so long as it does not contravene any provision of the Constitution of the United States.  *Kendall* v. *United States*, (1838) 12 Pet. 524, 619; *Mattingly* v. *District of Columbia*, (1878) 97 U. S. 687, 690; *Gibbons* v. *District of Columbia*, (1886) 116 U. S. 404, 407.

It is beyond doubt, at the present day, that the provisions of the Constitution of the United States securing the right of trial by jury, whether in civil or in criminal cases, are applicable to the District of Columbia.  *Webster* v. *Reid*, (1850) 11 How. 437, 460; *Callan* v. *Wilson*, (1888) 127 U. S. 540, 550; *Thompson* v. *Utah*, (1898) 170 U. S. 343.

The decision of this case mainly turns upon the scope and effect of the Seventh Amendment of the Constitution of the United States.  It may therefore be convenient, before particularly examining the acts of Congress now in question, to

refer to the circumstances preceding and attending the adoption of this Amendment, to the contemporaneous understanding of its terms, and to the subsequent judicial interpretation thereof, as aids in ascertaining its true meaning, and its application to the case at bar.

II. The first Continental Congress, in the Declaration of Rights adopted October 14, 1774, unanimously resolved that "the respective Colonies are entitled to the common law of England, and more especially to the great and inestimable privilege of being tried by their peers of the vicinage, according to the course of that law." 1 Journals of Congress, 28.

The Ordinance of 1787 declared that the inhabitants of the Northwest Territory should "always be entitled to the benefits of the writ of *habeas corpus,* and of the trial by jury," "and of judicial proceedings according to the course of the common law." 1 Charters and Constitutions, 431.

The Constitution of the United States, as originally adopted, merely provided in article 3, section 3, that "the trial of all crimes, except in cases of impeachment, shall be by jury." In the Convention which framed the Constitution, a motion to add this clause, "and a trial by jury shall be preserved as usual in civil cases," was opposed by Mr. Gorham of Massachusetts, on the ground that "the constitution of juries is different in different States, and the trial itself is usual in different cases, in different States;" and was unanimously rejected. 5 Elliott's Debates, 550.

Mr. Hamilton, in number 81 of the Federalist, when discussing the clause of the Constitution which confers upon this court "appellate jurisdiction, both as to law and fact, with such exceptions and under such regulations as the Congress shall make," and again, in more detail, in number 83, when answering the objection to the want of any provision securing trial by jury in civil actions, stated the diversity then existing in the laws of the different States regarding appeals and jury trials; and especially pointed out that in the New England States, and in those alone, appeals were allowed, as of course, from one jury to another until there had been two verdicts on one side, and in no other State but Georgia was there any

appeal from one to another jury. The diversity in the laws of the several States, he insisted, " shows the impropriety of a technical definition derived from the jurisprudence of any particular State," and "that no general rule could have been fixed upon by the Convention which would have corresponded with the circumstances of all the States." And he suggested that " the legislature of the United States would certainly have full power to provide that in appeals to the Supreme Court there should be no reëxamination of facts where they had been tried in the original causes by juries;" but if this " should be thought too extensive, it might be qualified with a limitation to such causes only as are determinable at common law in that mode of trial." 2 Federalist, (ed. 1788) pp. 319–321, 335, 336.

At the first session of the first Congress under the Constitution, Mr. Madison, in the House of Representatives, on June 8, 1789, submitted propositions to amend the Constitution by adding, to the clause concerning the appellate jurisdiction of this court, the words, " nor shall any fact, triable by a jury, according to the course of the common law, be otherwise reexaminable than according to the principles of the common law;" and, to the clause concerning trial by jury, these words: "In suits at common law, between man and man, the trial by jury, as one of the best securities to the rights of the people, ought to remain inviolate." 1 Annals of Congress, 424, 435. And those propositions, somewhat altered in form, were embodied in a single article, which was proposed by Congress on September 25, 1789, to the legislatures of the several States, and upon being duly ratified by them, became the Seventh Amendment to the Constitution, in these words: " In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ; and no fact tried by a jury shall be otherwise reexamined, in any court of the United States, than according to the rules of the common law."

A comparison of the language of the Seventh Amendment, as finally made part of the Constitution of the United States, with the Declaration of Rights of 1774, with the Ordinance

of 1787, with the essays of Mr. Hamilton in 1788, and with the amendments introduced by Mr. Madison in Congress in 1789, strongly tends to the conclusion that the Seventh Amendment, in declaring that " no fact tried by a jury shall be otherwise reëxamined, in any court of the United States, than according to the rules of the common law," had in view the rules of the common law of England, and not the rules of that law as modified by local statute or usage in any of the States.

This conclusion has been established, and " the rules of the common law " in this respect clearly stated and defined, by judicial decisions.

In *United States* v. *Wonson*, (1812) 1 Gallison, 5, a verdict and judgment for the defendant having been rendered in the District Court of the United States for the District of Massachusetts in an action of debt for a penalty, the United States appealed to the Circuit Court, and were held not to be entitled to try by a new jury in that court facts which had been tried and determined by the jury in the court below. " We should search in vain," said Mr. Justice Story, " in the common law, for an instance of an appellate court retrying the cause by a jury, while the former verdict and judgment remained in full force. The practice indeed seems to be a peculiarity of New England, and, if I am not misinformed, does not exist in more than one (if any) other State in the Union." And, after quoting the words of the Seventh Amendment, he observed : " Beyond all question, the common law here alluded to is not the common law of any individual State, (for it probably differs in all,) but it is the common law of England, the grand reservoir of all our jurisprudence." " Now, according to the rules of the common law, the facts once tried by a jury are never reëxamined, unless a new trial is granted in the discretion of the court before which the suit is depending, for good cause shown ; or unless the judgment of such court is reversed by a superior tribunal, on a writ of error, and a *venire facias de novo* is awarded. This is the invariable usage, settled by the decisions of ages." 1 Gallison, 14, 20.

In *Parsons* v. *Bedford*, (1830) 3 Pet. 433, this court, on writ of error to a lower court of the United States, held that

it had no power to reëxamine facts tried by a jury in the court below, although that court was held in Louisiana, where Congress had enacted that the mode of proceeding should conform to the laws directing the mode of practice in the district courts of the State, and a statute of the State authorized its supreme court to try anew on appeal facts tried by a jury in a district court. Mr. Justice Story, in delivering the judgment of this court, expounding the Seventh Amendment to the Constitution, after showing that, in the first clause, the words "suits at common law" were used in contradistinction to suits in equity and in admiralty, and included "not merely suits which the common law recognized among its old and settled proceedings," but all suits in which legal rights, and not equitable rights, were ascertained and determined, proceeded as follows: "But the other clause of the Amendment is still more important; and we read it as a substantial and independent clause. 'No fact tried by a jury shall be otherwise reëxamined, in any court of the United States, than according to the rules of the common law.' This is a prohibition to the courts of the United States to reëxamine any facts, tried by a jury, in any other manner. The only modes known to the common law to reëxamine such facts are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable; or the award of a *venire facias de novo*, by an appellate court, for some error of law which intervened in the proceedings." 3 Pet. 446–448.

This last statement has been often reaffirmed by this court. *Barreda* v. *Silsbee*, (1858) 21 How. 146, 166; *Justices* v. *Murray*, (1869) 9 Wall. 274, 277; *Miller* v. *Life Insurance Co.*, (1870) 12 Wall. 285, 300; *Insurance Co.* v. *Comstock*, (1872) 16 Wall. 258, 269; *Insurance Co.* v. *Folsom*, (1873) 18 Wall. 237, 249; *Railroad Co.* v. *Fraloff*, (1879) 100 U. S. 24, 31; *Lincoln* v. *Power*, (1894) 151 U. S. 436, 438; *Chicago, Burlington & Quincy Railroad* v. *Chicago*, (1897) 166 U. S. 226, 246.

The Judiciary Act of September 24, 1789, c. 20, drawn by Senator (afterwards Chief Justice) Ellsworth, and passed — within six months after the organization of the Government under the Constitution, and on the day before the first ten

Amendments were proposed to the legislatures of the States — by the First Congress, in which were many eminent men who had been members of the Convention which formed the Constitution, has always been considered as a contemporaneous exposition of the highest authority. *Cohens* v. *Virginia,* (1821) 6 Wheat. 264, 420; *Parsons* v. *Bedford,* above cited; *Börs* v. *Preston,* (1884) 111 U. S. 252, 256; *Ames* v. *Kansas,* (1884) 111 U. S. 449, 463, 464; *Wisconsin* v. *Pelican Ins. Co.,* (1888) 127 U. S. 265, 297. That act provided, in §§ 9 and 12, that the trial of issues of fact, in a District or Circuit Court, in all suits, except those of equity or admiralty jurisdiction, should be by jury; in § 13, that the trial of issues of fact in this court, in the exercise of its original jurisdiction, in all actions at law against citizens of the United States, should be by jury; in § 17, that " all the said courts of the United States " should " have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law;" and in §§ 22 and 24, that final judgments of the District Court might be reviewed by the Circuit Court, and final judgments of the Circuit Court be reviewed by this court, upon writ of error, for errors in law, but not for any error in fact. 1 Stat. 77, 80, 81, 83, 84. Those provisions, so far as regards actions at law, have since remained in force, almost uninterruptedly; and they have been reënacted in the Revised Statutes, allowing the parties, however, to waive a jury and have their case tried by the court. Rev. Stat. §§ 566, 633, 648, 689, 691, 726, 1011.

The only instances that have come to our notice, in which Congress has undertaken to authorize a second trial by jury to be had in a court of the United States, while the verdict of a jury upon a former trial in a court of record has not been set aside, are to be found in two temporary acts passed during the last war with Great Britain, and in an act passed during the war of the rebellion and continued in force for a short time afterwards, each of which provided that certain actions brought in a state court against officers or persons acting under the authority of the United States might, after final judgment, be removed by appeal or writ of error to the

Circuit Court of the United States, and that court should "thereupon proceed to try and determine the facts and the law in such action in the same manner as if the same had been there originally commenced, the judgment in such case notwithstanding." Acts of February 4, 1815, c. 31, §§ 8, 13, and March 3, 1815, c. 94, §§ 6, 8; 3 Stat. 199, 200, 234, 235; Act of March 3, 1863, c. 81, § 5; 12 Stat. 757 ; Act of May 11, 1866, c. 80, § 3; 14 Stat. 46. But such a provision, so far as it authorized the facts to be tried and determined in the Circuit Court of the United States in a case in which a verdict had been returned in the state court, was held to be inconsistent with the Seventh Amendment of the Constitution of the United States by the Supreme Judicial Court of Massachusetts, in a case arising under the acts of 1815 ; and by the Supreme Court of New York and by this court, in cases arising under the acts of 1863 and 1866. *Wetherbee* v. *Johnson,* (1817) 14 Mass. 412; *Patrie* v. *Murray,* (1864) 43 Barb. 323; *S. C. nom. Justices* v. *Murray,* (1869) 9 Wall. 274; *McKee* v. *Rains,* (1869) 10 Wall. 22.

In *Justices* v. *Murray,* an action was brought by Patrie against Murray, a United States marshal, and his deputy, in the Supreme Court of the State of New York, and a verdict and judgment for the plaintiff were rendered in that court. The defendant sued out a writ of error from the Circuit Court of the United States, under the act of Congress of March 3, 1863, c. 81, § 5 ; and moved the state court to stay proceedings. The state court denied the motion, and refused to make a return to the writ of error, upon the ground that the act of Congress, so far as it provided that a case, after verdict and judgment in a state court, might be removed to the Circuit Court of the United States for trial and determination upon both the facts and the law, in the same manner as if the case had been originally commenced in that court, was in violation of the Seventh Amendment of the Constitution of the United States, and for that reason null and void. *Patrie* v. *Murray,* 43 Barb. 323. Thereupon the Circuit Court of the United States, without expressing any opinion upon this point, granted a writ of mandamus to the clerk of the state court.

*Murray* v. *Patrie*, 1 Blatchford, 343; 9 Wall. 276, note.
The judgment of the Circuit Court ordering a mandamus was
then brought to this court by writ of error, and reversed.
Mr. Justice Nelson, in delivering judgment, after remarking
that the case (which had been twice argued by very able
counsel) had received the most deliberate consideration of the
court, quoting the statements of Mr. Justice Story in *Parsons*
v. *Bedford*, above cited, and recognizing that the second
clause of the Seventh Amendment could not be invoked in a
state court to prohibit it from reëxamining, on a writ of
error, facts that had been tried by a jury in a lower court,
went on to say : " It is admitted that the clause applies to the
appellate powers of the Supreme Court of the United States
in all common law cases coming up from an inferior Federal
court, and also to the Circuit Court, in like cases, in the
exercise of its appellate powers. And why not, as it respects
the exercise of these powers, in cases of Federal cognizance
coming up from a state court ? The terms of the Amend-
ment are general, and contain no qualification in respect to
the restriction upon the appellate jurisdiction of the courts,
except as to the class of cases, namely, suits at common law,
where the trial has been by jury. The natural inference is
that no other was intended. Its language, upon any reason-
able, if not necessary, interpretation, we think, applies to this
entire class, no matter from what court the case comes, of
which cognizance can be taken by the appellate court." The
*ratio decidendi*, the line of thought pervading and controlling
the whole opinion, was that the Seventh Amendment un-
doubtedly prohibited any court of the United States from
reëxamining facts once tried by a jury in a lower court of
the United States, and that there was no reason why the
prohibition should not equally apply to a case brought into a
court of the United States from a state court. " In both
instances," it was said, " the cases are to be disposed of by
the same system of laws, and by the same judicial tribunal."
9 Wall. 277–279.

In *Chicago, Burlington & Quincy Railroad* v. *Chicago*,
166 U. S. 226, 242–244, the same course of reasoning was fol-

*J. Gray*

Opinion of the Court.

lowed, and was applied to. a case brought by writ of error from the highest court of a State to this court.

It must therefore be taken as established, by virtue of the Seventh Amendment of the Constitution, that either party to an action at law (as distinguished from suits in equity or in admiralty) in a court of the United States, where the value in controversy exceeds twenty dollars, has the right to a trial by jury; that, when a trial by jury has been had in an action at law, in a court either of the United States or of a State, the facts there tried and decided cannot be reëxamined in any court of the United States, otherwise than according to the rules of the common law of England; that by the rules of that law, no other mode of reëxamination is allowed than upon a new trial, either granted by the court in which the first trial was had or to which the record was returnable, or ordered by an appellate court for error in law; and therefore that, unless a new trial has been granted in one of those two ways, facts once tried by a jury cannot be tried anew, by a jury or otherwise, in any court of the United States.

The case of enforcing, in a court of the United States, a statute of a State giving one new trial, as of right, in an action of ejectment, is quite exceptional; and such a statute does not enlarge, but restricts, the rules of the common law as to reëxamining facts once tried by a jury, for by the common law a party was not concluded by a single verdict and judgment in ejectment, but might bring as many successive ejectments as he pleased, unless restrained by a court of equity after repeated verdicts against him. Bac. Ab. Ejectment, I; *Equator Co.* v. *Hall,* (1882) 106 U. S. 86; *Smale* v. *Mitchell,* (1892) 143 U. S. 99.

III. " Trial by jury," in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and empanelled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to

instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion. Yet there are unequivocal statements of it to be found in the books.

Lord Hale, in his History of the Common Law, c. 12, "touching trial by jury," says: "Another excellency of this trial is this, that the judge is always present at the time of the evidence given in it. Herein he is able in matters of law, emerging upon the evidence, to direct them; and also, in matters of fact, to give them great light and assistance, by his weighing the evidence before them, and observing where the question and knot of the business lies; and by showing them his opinion even in matter of fact, which is a great advantage and light to laymen. And thus, as the jury assists the judge in determining the matter of fact, so the judge assists the jury in determining points of law, and also very much in investigating and enlightening the matter of fact, whereof the jury are the judges." And again, in summing up the advantages of trial by jury, he says: "It has the advantage of the judge's observation, attention and assistance, in point of law by way of decision, and in point of fact by way of direction to the jury." 2 Hale Hist. Com. Law, (5th ed.) 147, 156. See also 1 Hale P. C. 33.

The Supreme Court of Ohio held that the provision of article 1, section 19, of the constitution of that State, requiring compensation for private property taken for the public use to "be assessed by a jury," was not satisfied without an assessment by a jury of twelve men under the supervision of a court; and, speaking by Chief Justice Thurman, said : " That the term ' jury,' without addition or prefix, imports a body of twelve men in a court of justice, is as well settled as any legal proposition can be." "We agree with Grimke, J., in *Willyard* v. *Hamilton*, 7 Ohio, pt. 2, 111, 118, that a jury, properly speaking, is an appendage of a court, a tribunal auxiliary to the administration of justice in a court, that a presiding law tribunal

is implied, and that the conjunction of the two is the peculiar and valuable feature of the jury trial; and, as a necessary inference, that a mere commission, though composed of twelve men, can never be properly regarded as a jury. Upon the whole, after a careful examination of the subject, we are clearly of the opinion that the word ' jury,' in section 19 of article 1, as well as in other places in the constitution where it occurs, means a tribunal of twelve men, presided over by a court, and hearing the allegations, evidence and arguments of the parties." *Lamb* v. *Lane*, (1854) 4 Ohio St. 167, 177, 179.

The Justices of the Supreme Judicial Court of New Hampshire, in an opinion given to the House of Representatives of the State, said : " The terms ' jury,' and ' trial by jury,' are, and for ages have been, well known in the language of the law. They were used at the adoption of the constitution, and always, it is believed, before that time, and almost always since, in a single sense. A jury for the trial of a cause was a body of twelve men, described as upright, well qualified and lawful men, disinterested and impartial, not of kin nor personal dependents of either of the parties, having their homes within the jurisdictional limits of the court, drawn and selected by officers free from all bias in favor or against either party, duly empanelled under the direction of a competent court, sworn to render a true verdict according to the law and the evidence given them; who, after hearing the parties and their evidence, and receiving the instructions of the court relative to the law involved in the trial, and deliberating, when necessary, apart from all extraneous influences, must return their unanimous verdict upon the issue submitted to them." *Opinion of Justices*, (1860) 41 N. H. 550, 551.

Judge Sprague, in the District Court of the United States for the District of Massachusetts, said : " The Constitution secures a trial by jury, without defining what that trial is. We are left to the common law to learn what it is that is secured. Now the trial by jury was, when the Constitution was adopted, and for generations before that time had been, here and in England, a trial of an issue of fact by twelve men, under the direction and superintendence of the court. This

direction and superintendence was an essential part of the trial." "At the time of the adoption of the Constitution, it was a part of the system of trial by jury in civil cases that the court might, in its discretion, set aside a verdict." "Each party, the losing as well as the winning, has a right to the legitimate trial by jury, with all its safeguards, as understood when the Constitution was adopted." *United States* v. *Bags of Merchandise*, (1863) 2 Sprague, 85–88.

This court has expressed the same idea, saying: "In the courts of the United States, as in those of England, from which our practice was derived, the judge, in submitting a case to the jury, may, at his discretion, whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, call their attention to parts of it which he thinks important, and express his opinion upon the facts." *Vicksburg &c. Railroad* v. *Putnam*, (1886) 118 U. S. 545, 553. And again: "Trial by jury in the courts of the United States is a trial presided over by a judge, with authority, not only to rule upon objections to evidence and to instruct the jury upon the law, but also, when in his judgment the due administration of justice requires it, to aid the jury by explaining and commenting upon the testimony, and even giving them his opinion on questions of fact, provided only he submits those questions to their determination." *United States* v. *Philadelphia & Reading Railroad*, (1887) 123 U. S. 113, 114. And see *Sparf* v. *United States*, (1895) 156 U. S. 51, 102, 106; *Thompson* v. *Utah*, (1898) 170 U. S. 343, 350; Miller on the Constitution, 511; Cooley's Principles of Constitutional Law, 239.

IV. By the common law, justices of the peace had some criminal jurisdiction, but no jurisdiction whatever of suits between man and man. There were in England, however, courts baron, county courts, courts of conscience and other petty courts, which were not courts of record, and whose proceedings varied in many respects from the course of the common law, but which were empowered to hear and determine, in a summary way, without a jury, personal actions in which the debt or damages demanded did not exceed forty

shillings. 3 Bl. Com. 33, 35, 81. The twelve freeholders summoned to the county court of Middlesex, and authorized, when there assembled together with the county clerk, and without any judge being present, to decide by a majority, and in a summary way, causes not exceeding forty shillings, under the statute of 23 Geo. II, c. 33, (1750) commended by Blackstone, were clearly not a common law jury. 3 Bl. Com. 83, and Coleridge's note.

In this country, before the Declaration of Independence, the jurisdiction over small debts, which county courts and similar courts had in England, was generally vested in single justices of the peace. Whenever a trial by jury of any kind was allowed at any stage of an action begun before a justice of the peace, it was done in one of two ways; either by providing for an appeal from the judgment of the justice of the peace to a court of record, upon giving bond, with surety, "to prosecute the said appeal there with effect, and to abide the order of said court," and for a trial in that court by a common jury, as in Massachusetts; 6 Dane Ab. 405, 442; Mass. Prov. Stats. 1697, c. 8, § 1, and 1699, c. 2, § 3, (1 Prov. Laws, State ed. pp. 283, 370,) and Stat. 1783, c. 42; or by providing for a trial by a jury of six before the justice of the peace, as in New York and in New Jersey; 6 Dane Ab. 417; N. Y. Stats. of December 16, 1737, 1 Smith & Livingston's Laws, p. 238, § 4, and of December 24, 1759, 2 Ib. p. 170, § 4; N. J. Stat. February 11, 1775, Allinson's Laws, p. 468; *Wanser* v. *Atkinson*, (1881) 14 Vroom, (43 N. J. Law,) 571, 572.

Justices of the peace in the District of Columbia, in the exercise of the jurisdiction conferred upon them by Congress to try and determine cases, criminal or civil, are doubtless, in some sense, judicial officers. *Wise* v. *Withers*, 3 Cranch, 330, 336. But they are not inferior courts of the United States, for the Constitution requires judges of all such courts to be appointed during good behavior. Nor are they, in any sense, courts of record. They were never considered in Maryland as "courts of law." *Weikel* v. *Cate*, (1882) 58 Maryland, 105, 110. The statutes of Maryland of 1715, c. 12, and of 1763, c. 21, (in Bacon's Laws of Maryland,) and of 1791, c. 68, (in

2 Kilty's Laws,) defining the civil jurisdiction of justices of the peace, were entitled acts "for the speedy recovery of small debts out of court." And Congress has vested in them, "as individual magistrates," the powers and duties which justices of the peace previously had under the laws in force in the District of Columbia. Act of February 27, 1801, c. 15, § 11; 2 Stat. 107; Rev. Stat. D. C. § 995.

A trial by a jury of twelve men before a justice of the peace, having been unknown in England or America before the Declaration of Independence, can hardly have been within the contemplation of Congress in proposing, or of the people in ratifying, the Seventh Amendment to the Constitution of the United States.

V. Another question having an important bearing on the validity and the interpretation of the successive acts of Congress, concerning trial by jury in civil actions begun before justices of the peace in the District of Columbia, is whether the right of trial by jury, secured by the Seventh Amendment to the Constitution, is preserved by allowing a common law trial by jury in a court of record, upon appeal from a judgment of a justice of the peace, and upon giving bond with surety to prosecute the appeal and to abide the judgment of the appellate court.

The question considered and decided by this court in *Callan* v. *Wilson*, (1888) 127 U. S. 540, though somewhat analogous, was essentially a different one. That case was a criminal case, not affected by the Seventh Amendment of the Constitution, but depending upon the effect of those other provisions of the original Constitution and of the Fifth and Sixth Amendments, which declare that "the trial of all causes, except in cases of impeachment, shall be by jury," that "no person shall be deprived of life, liberty or property without due process of law," and that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury." The point there decided was that a person accused of a conspiracy to prevent another person from pursuing his lawful calling, and by intimidations and molestations to reduce him to beggary, had the right to a trial by

jury in the first instance, and that it was not enough to allow him a trial by jury after having been convicted by a justice of the peace without a jury. The decision proceeded upon the ground that such a conspiracy was an offence of a grave character, affecting the public at large, as well as one the punishment of which might involve the liberty of the citizen ; it was conceded that there was a class of minor offences to which the same rule could not apply ; and the question of applying a like rule to civil cases did not arise in the case, and was not touched by the court.

All the other cases cited at the bar, in which the constitutional right of trial by jury was held not to be secured by allowing such a trial on appeal from a justice of the peace, or from an inferior court, were criminal cases. *Greene* v. *Briggs*, (1852) 1 Curtis, 311, 325 ; *Saco* v. *Wentworth*, (1853) 37 Maine, 165 ; *In re Dana*, (1872) 7 Benedict, 1.

On the other hand, the authority of the legislature, consistently with constitutional provisions securing the right of trial by jury, to provide, in civil proceedings for the recovery of money, that the trial by jury should not be had in the tribunal of first instance, but in an appellate court only, is supported by unanimous judgments of this court in two earlier cases, the one arising in the District of Columbia, and the other in the State of Pennsylvania.

The declaration of rights, prefixed to the constitution of Maryland of 1776, declared, in article 3, that " the inhabitants of Maryland are entitled to the common law of England, and the trial by jury according to the course of that law ; " and, in article 21, repeated the words of Magna Charta, " No person ought to be taken or imprisoned," &c., " or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." 1 Charters and Constitutions, 817, 818. The statute of the State of Maryland of 1793, c. 30, incorporating a bank in the District of Columbia, provided that on any bill or note made or indorsed to the bank, and expressly made negotiable at the bank, and not paid when due, or within ten days after demand, the bank, upon filing an affidavit of its president to the sum due, might obtain

from the clerk of a court an execution against the property of the debtor; " and if the defendant shall dispute the whole or any part of the said debt, on the return of the execution, the court before whom it is returned shall and may order an issue to be joined, and trial to be had in the same court at which the return is made, and shall make such other proceedings that justice may be done in the speediest manner." 2 Kilty's Laws. The general court of Maryland, in 1799, held that this statute did not infringe the constitutional right of trial by jury. *Bank of Columbia* v. *Ross,* 4 Har. & McH. 456, 464, 465. The statute was continued in force in the District of Columbia by the acts of Congress of February 27, 1801, c. 15, § 5, and March 3, 1801, c. 24, § 5. 2 Stat. 106, 115; *Bank of Columbia* v. *Okely,* (1819) 4 Wheat. 235, 246.

In *Bank of Columbia* v. *Okely,* an execution so issued was sought to be quashed upon the ground that the statute of Maryland violated the Seventh Amendment of the Constitution of the United States, as well as the constitution of the State of Maryland. But this court held the statute to be consistent with both constitutions, and, speaking by Mr. Justice Johnson, said : " This court would ponder long before it would sustain this action, if we could be persuaded that the act in question produced a total prostration of the trial by jury, or even involved the defendant in circumstances which rendered that right unavailing for his protection. But a power is reserved to the judge, to make such rules and orders 'as that justice may be done;' and as the possession of judicial power imposes an obligation to exercise it, we flatter ourselves that, in practice, the evils so eloquently dilated on by the counsel do not exist. And if the defendant does not avail himself of the right given him, of having an issue made up, and the trial by jury, which is tendered to him by the act, it is presumable that he cannot dispute the justice of the claim. That this view of the subject is giving full effect to the Seventh Amendment of the Constitution is not only deducible from the general intent, but from the express wording of the Article referred to. Had the terms been that 'the *trial* by jury shall be preserved,' it might

have been contended that they were imperative, and could not be dispensed with. But the words are, that the *right* of trial by jury shall be preserved, which places it on the foot of a *lex pro se introducta*, and the benefit of it may therefore be relinquished. As to the words of Magna Charta, incorporated into the constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at length settled down to this: that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice. With this explanation, there is nothing left to this individual to complain of. What he has lost, he has voluntarily relinquished; and the trial by jury is open to him, either to arrest the progress of the law in the first instance, or to obtain redress for oppression, if the power of the bank has been abused. The same answer is equally applicable to the argument founded on the third article of the Maryland constitution." 4 Wheat. 243, 244.

The constitution of Pennsylvania of 1776 provided, in article 11 of the declaration of rights, that " in controversies respecting property, and in suits between man and man, the parties have a right to trial by jury, which ought to be held sacred," and, in section 25 of the frame of government, that " trials shall be by jury as heretofore ; " and the constitution of 1790, in section 6 of the bill of rights, declared that " trial by jury shall be as heretofore, and the right thereof remain inviolate." 2 Charters and Constitutions, 1542, 1546, 1554. The statutes of Pennsylvania, from 1782, required all accounts between the State and its officers to be settled by the comptroller general, and approved by the executive council ; and, if a balance was found due to the State, authorized the comptroller general to direct the clerk of the county where the officer resided to issue summary process to collect the amount due. And a statute of February 18, 1785, after reciting " whereas it will be agreeable to the constitution of this State, which has declared that ' trial by jury shall be as heretofore,' that persons conceiving themselves aggrieved by the

proceedings of the said comptroller general should be allowed to have trial of the facts by a jury, and questions of law arising thereupon determined in a court of record," enacted that any such person might appeal from the settlement or award of the comptroller general to the Supreme Court of the State, " provided the said party enter sufficient security" before a judge "to prosecute such appeal with effect, and to pay all costs and charges which the Supreme Court shall award, and also pay any sum of money which shall appear by the judgment of the said court to be due from him" to the State; and might have the whole matter tried by a jury upon the appeal. This statute also provided that the settlement of any account by the comptroller general, and confirmation thereof by the executive council, whereby any sum of money should be found due from any person to the State, should be a lien on all his real estate throughout the State. 2 Dall. Laws Penn. 44, 247, 248, 251.

In *Livingston* v. *Moore*, (1833) 7 Pet. 469, which came to this court from the Circuit Court of the United States for the Eastern District of Pennsylvania, the validity of a lien so acquired by the State was attacked on the ground, among others, that the statutes creating it were contrary to section 6 of the Pennsylvania bill of rights of 1790. But this court upheld the validity of the lien, and in an opinion delivered by Mr. Justice Johnson, after elaborately discussing the other questions in the case, briefly disposed of this one as follows : " As to the sixth section of the Pennsylvania bill of rights, we can see nothing in these laws on which to fasten the imputation of a violation of the right of trial by jury; since, in creating the lien attached to the settled accounts, the right of an appeal to a jury is secured to the debtor." 7 Pet. 552.

While, as has been seen, the Seventh Amendment to the Constitution of the United States requires that "the right of trial by jury shall be preserved" in the courts of the United States in every action at law in which the value in controversy exceeds twenty dollars, and forbids any fact once tried by a jury to "be otherwise reëxamined, in any court of the United States, than according to the rules of the common law," mean-

ing thereby the common law of England, and not the law of any one or more of the States of the Union, yet it is to be remembered that, as observed by Justice Johnson, speaking for this court, in *Bank of Columbia* v. *Okely*, above cited, it is not "trial by jury," but "the right of trial by jury," which the Amendment declares "shall be preserved." It does not prescribe at what stage of an action a trial by jury must, if demanded, be had; or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it. In passing upon these questions, the judicial decisions and the settled practice in the several States are entitled to great weight, inasmuch as the constitutions of all of them had secured the right of trial by jury in civil actions, by the words "shall be preserved," or "shall be as heretofore," or "shall remain inviolate," or "shall be held sacred," or by some equivalent expression.

A long line of judicial decisions in the several States, beginning early in this century, maintains the position that the constitutional right of trial by jury in civil actions is not infringed by a statute which sets the pecuniary limit of the jurisdiction of justices of the peace in actions at law higher than it was when the particular constitution was adopted, allows a trial by jury for the first time upon appeal from the judgment of the justice of the peace, and requires of the appellant a bond with surety to prosecute the appeal and to pay the judgment of the appellate court. The full extent and weight of those precedents cannot be justly appreciated without referring to the texts of the statutes which they upheld, and which have not always been fully set forth in the reports.

The leading case is *Emerick* v. *Harris*, (1808) 1 Binney, 416, which arose under the statutes of Pennsylvania. The provisions of the constitution of the State are quoted above. The provincial statute of March 1, 1745, gave a justice of the peace jurisdiction of actions to recover the sum of forty shillings and upwards and not exceeding five pounds; and authorized any person aggrieved by his judgment to appeal to the court of common pleas, "first entering into recognizance, with at least one sufficient security, at least in double value of

the debt or damages sued for, and sufficient to answer all costs, to prosecute the said appeal with effect, and to abide the order of the said court, or in default thereof to be sent by *mittimus* to the sheriff of the county, by him to be kept until he shall give such security, or be otherwise legally discharged." 1 Dall. Laws Penn. 304, 307. The statute of April 5, 1785, enlarged the summary jurisdiction of a justice of the peace to sums not exceeding ten pounds; and, for the avowed purpose of conforming to the constitution of the State, gave an appeal to the court of common pleas, upon the like terms as by the statute of 1745. And the statute of March 11, 1789, conferred upon the aldermen of the city of Philadelphia the jurisdiction of justices of the peace. 2 Dall. Laws Penn. 304, 305, 660. The statute of April 19, 1794, extended the jurisdiction of justices of the peace, as well as of the aldermen of Philadelphia, to demands not exceeding twenty pounds, with a right of appeal, after judgment, if the amount exceeded five pounds, to the court of common pleas, "in the same manner, and subject to all other restrictions and provisions," as in the statute of 1745. 3 Dall. Laws Penn. 536–538. In support of a writ of certiorari to quash a judgment for eleven pounds and six shillings, rendered in the alderman's court of Philadelphia upon default of the defendant, it was argued "that the constitution, by directing that trial by jury should be as heretofore, and the right thereof remain inviolate, had interdicted the legislature from abolishing or abridging this right in any case in which it had existed before the constitution; that a prohibition to do this directly was a prohibition to do it indirectly, either by deferring the decision of a jury until one, two or more previous stages of the cause had been passed, or by clogging the resort to that tribunal by penalties of any kind, either forfeiture of costs, security upon appeal, or delay; that the power to obstruct at all implied the power to increase the obstructions until the object became unattainable; and that the instant the enjoyment of the right was to be purchased by sacrifices unknown before the constitution, the right was violated, and ceased to exist as before." But the Supreme Court of Pennsylvania held that the statute of 1794 was a constitu-

tional regulation of judicial proceedings by legislative authority. 1 Binney, 424, 428. See also *McDonald* v. *Schell*, (1820) 6 S. & R. 240; *Biddle* v. *Commonwealth*, (1825) 13 S. & R. 405, 410; *Haines* v. *Levin*, (1866) 51 Penn. St. 412.·

Soon after the decision in *Emerick* v. *Harris*, a similar decision was made by the Supreme Court of North Carolina. In the constitution of that State of 1776, it was declared that "in all controversies at law, respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable." 2 Charters and Constitutions, 1410. When that constitution was formed, justices of the peace had jurisdiction over sums of twenty shillings and under. In 1803, the legislature extended their jurisdiction to thirty pounds, "subject nevertheless to the right of appeal, as in similar cases" — a statute of 1794 having provided that, in all cases of appeals from the judgment of a justice, the appellant's subscription and acknowledgment of the security, attested by the justice, "shall be sufficient to bind the security to abide by and perform the judgment of the court; and where judgment shall be against the appellant, the same shall be entered on motion against the security, and execution shall issue against the principal, or against both principal and security, at the option of the plaintiff." 2 Martin's Laws of North Carolina, pp. 60, 207. "The legislature has," said the court, "given to either party the right of appealing to a court, where he will have the benefit of a trial by jury. It cannot, therefore, be said that the right of such trial is taken away. So long as the trial by jury is preserved through an appeal, the preliminary mode of obtaining it may be varied at the will and pleasure of the legislature. The party wishing to appeal may be subjected to some inconvenience in getting security, but this inconvenience does not in this, nor in any other case where security is required, amount to a denial of right." *Keddie* v. *Moore*, (1811) 2 Murphy, 41, 45; followed in *Wilson* v. *Simonton*, (1821) 1 Hawks, 482.

The constitution of Tennessee of 1796 declared that "the right of trial by jury shall remain inviolate." 2 Charters and

Constitutions, 1674. At the time of the adoption of that constitution, as appears by the territorial statute of 1794, c. 1, §§ 52, 54, justices of the peace had jurisdiction only of actions for twenty dollars and under; and either party might appeal to the county court, "first giving security for prosecuting such appeal with effect, which said appeal shall be tried and determined at the first court, by a jury of good and lawful men, and determination thereon shall be final." The jurisdiction of a justice of the peace was extended by the statute of 1801, c. 7, to fifty dollars, "subject, nevertheless, to appeal by either party, to be tried in the county court by a jury, as in other cases." And the statute of 1809, c. 63, provided that an appeal from the judgment of a justice of the peace should not be granted, unless the appellant "enter into bond with good and sufficient security, with a condition to prosecute said appeal;" and that, if the papers should not be returned to the clerk of the county court at the return term, it should "be lawful for the appellee, on the production of the papers in the cause, to move for judgment against the appellant and his securities, for the amount of the debt and costs, if he should have been the original defendant; if not, for the amount of costs." 1 Scott's Laws of Tennessee, pp. 476, 695, 1166. The statute of 1831, c. 59, further extended the jurisdiction of a justice of the peace to one hundred dollars. Public Acts of Tennessee of 1831, p. 83. In a case arising under the last statute, the Supreme Court of Tennessee, while Chief Justice Catron (afterwards a justice of this court) was a member thereof, declared it to have been settled by a long series of its decisions, beginning under the statute of 1801, that such a statute was constitutional, upon the ground that "inasmuch as the party was in all cases allowed his appeal, when he could have a trial by jury, the right of trial by jury was not taken away; so that the terms of requiring bail or security for the money belonged to the legislature to provide, and though the security required in the cases of appeal differed from those cases where the party was brought into court by original writ, still, as it did not take away the right of trial by jury, the act was not unconstitutional." *Morford* v. *Barnes*, (1835)

8 Yerger, 444, 446; followed in *Pryor* v. *Hays*, (1836) 9 Yerger, 416.

The constitution of Connecticut of 1818, article 1, section 21, likewise declared that "the right of trial by jury shall remain inviolate." 1 Charters and Constitutions, 259. At the time of its adoption, the jurisdiction of justices of the peace, in actions of trespass, was limited to fifteen dollars. In the Revised Laws of 1821, tit. 2, § 23, their jurisdiction was extended to thirty-five dollars; but in demands for more than seven dollars an appeal was allowed to the county court, the appellant to "give sufficient bond, with surety, to the adverse party, to prosecute such appeal to effect, and to answer all damages in case he make not his plea good." The Supreme Court of Connecticut held the statute constitutional; and Chief Justice Hosmer, in delivering judgment, said : "I admit that the trial by jury must continue unimpaired ; and shall not now dispute that there can be no enlargement of a justice's jurisdiction, which shall take from any one the legal power of having his cause heard by a jury, precisely as it might have been before the constitution was adopted. It is indisputable that a justice of the peace is empowered to hear all causes personally, and that he cannot try them by a jury. The question, then, is brought to this narrow point: whether the enlargement of a justice's jurisdiction, with the right of appeal, as it existed when the constitution was adopted, is a violation of the above privilege, secured by that instrument. I am clear that it is not; and that a construction of this nature is equally unwarranted by the words, and by the intention, of the constitution. An instrument remains inviolate if it is not infringed; and by a violation of the trial by jury, I understand taking it away, prohibiting it, or subjecting it to unreasonable and burdensome regulations, which, if they do not amount to a literal prohibition, are, at least, virtually of that character. It never could be the intention of the constitution to tie up the hands of the legislature, so that no change of jurisdiction could be made, and no regulation even of the right of trial by jury could be had. It is sufficient, and within the reason-

able intendment of that instrument, if the trial by jury be
not impaired, although it may be subjected to new modes,
and even rendered more expensive, if the public interest
demand such alteration. A law containing arbitrary and
unreasonable provisions, made with the intention of annihi-
lating or impairing the trial by jury, would be subject to the
same considerations, as if the object had been openly and
directly pursued. But, on the other hand, every reasonable
regulation, made by those who value this palladium of our
rights, and directed to the attainment of the public good,
must not be deemed inhibited because it increases the burden
or expense of the litigating parties." "In conclusion, I am
satisfied that the liberty of appeal preserves the right of trial
by jury inviolate, within the words and fair intendment of
the constitution ; and that no such unreasonable hardship is
put on the appellant, by the bond required for the prosecution
of the appeal, as to justify the assertion that the right of trial
by jury is in any manner impaired." *Beers* v. *Beers*, (1823)
4 Conn. 535, 538–540. See also *Colt* v. *Eves*, (1837) 12 Conn.
243, 253 ; *Curtis* v. *Gill*, (1867) 34 Conn. 49.

Before the adoption of the constitution of the State of
Maryland, each of the statutes of the Province " for the
speedy recovery of small debts out of court, before a single
justice of the peace," would appear to have restricted his civil
jurisdiction to claims for thirty-three shillings and four pence,
as in the statute of 1715, c. 12, or for fifty shillings, as in the
statute of 1763, c. 21. Bacon's Laws.

By the statute of the State of Maryland of 1791, c. 68, " for
the speedy recovery of small debts out of court," § 1, any one
justice of the peace, of the county wherein the debtor resided,
was vested with jurisdiction to try, hear and determine " all
cases where the real debt and damages doth not exceed ten
pounds current money," (or twenty-six and two thirds dol-
lars,) " and, upon full hearing of the allegations and evidences
of both parties, to give judgment, according to the laws of
the land, and the equity and right of the matter." By § 6,
his jurisdiction was made exclusive to that extent. By § 4,
" in all cases where the debt or demand doth exceed twenty

shillings common money," (or two and two thirds dollars,)
" and either plaintiff or defendant shall think him or herself
aggrieved by the judgment of any magistrate, he or she shall
be at liberty to appeal to the next county court, before the jus-
tices thereof, who are hereby, upon the petition of the appel-
lant, in a summary way, empowered and directed to hear the
allegations and proofs of both parties, and determine upon the
same according to the law of the land, and the equity and
right of the matter;" and "either of the said parties may
demand a trial by jury, or leave the cause to be determined
by the court, at their election."   And by § 5, the appellant
was required to give bond with sufficient sureties, in double
the sum to be recovered, to prosecute his appeal, and to pay
the appellee, "in case the said judgment shall be affirmed, as
well the debt, damage and cost adjudged by the justice from
whose judgment such appeal shall be made, as also all cost
and damage that shall be awarded by the court before whom
such appeal shall be heard, tried and determined."   Latrobe's
Justices' Practice, (1st ed. 1826) pp. 56, 112, 360, 362; 2 Kilty's
Laws.

By the statute of Maryland of 1809, c. 76, §§ 1, 6, (3 Kilty's
Laws,) the exclusive original jurisdiction of justices of the
peace was extended to all cases where the real debt or dam-
ages demanded did not exceed fifty dollars.   And by the stat-
ute of Maryland of 1852, c. 239, their original jurisdiction was
extended to all cases of contract, tort or replevin, where the
sum or damage or thing demanded did not exceed one hun-
dred dollars, with a right of appeal to the county court; and
was made concurrent with that of the county court where it
exceeded fifty dollars.

In *Steuart* v. *Baltimore*, (1855) 7 Maryland, 500, the Court
of Appeals of Maryland, speaking by Judge Eccleston, said:
" In the third section of the old bill of rights, it was declared
' that the inhabitants of Maryland are entitled to the common
law of England, and the trial by jury, according to the course
of that law.'   Notwithstanding this, the legislature passed
laws at different times, extending the jurisdiction of justices
of the peace in matters of contract, and giving jurisdiction

in matters of tort where they had none previously. These laws, of course, made no provision for trials by jury except on appeal to the county courts, and yet they were constantly acquiesced in, and not considered as being repugnant to the bill of rights." The court then referred to *Morford* v. *Barnes, Beers* v. *Beers* and *McDonald* v. *Schell*, above cited, and added: " These cases fully establish the principle that where a law secures a trial by jury upon an appeal, it is no violation of a constitutional provision for guarding that right, although such law may provide for a primary trial without the intervention of a jury. This is upon the ground that the party, if he thinks proper, can have his case decided by a jury before it is finally settled." 7 Maryland, 511, 512.

To the like general effect are the following: Kentucky Stat. January 30, 1812, §§ 4–6, 2 Morehead & Brown's Digest, pp. 893, 894; *Pollard* v. *Holeman*, (1816) 4 Bibb, 416; *Head* v. *Hughes*, (1818) 1 A. K. Marshall, 372; *Feemster* v. *Anderson*, (1828) 6 T. B. Monroe, 537; *Flint River Co.* v. *Foster*, (1848) 5 Georgia, 194, 208; *Lincoln* v. *Smith*, (1855) 27 Vermont, 328, 361; *Lamb* v. *Lane*, (1854) 4 Ohio St. 167, 180; *Norton* v. *Mc-Leary*, (1858) 8 Ohio St. 205, 209; *Reckner* v. *Warner*, (1872) 22 Ohio St. 275, 291, 292; Cooley Const. Lim. (6th ed.) 505; 1 Dillon Mun. Corp. (4th ed.) § 439.

VI. When the District of Columbia passed under the exclusive jurisdiction of the United States, the statute of Maryland of 1791, c. 68, above quoted, (having been continued in force by the statute of that State of 1798, c. 71, 2 Kilty,) was one of the laws in force in the District.

The act of Congress of February 27, 1801, c. 15, in § 1, enacted that the laws in force in the State of Maryland, as they then existed, should be and continue in force in that part of the District which had been ceded by that State to the United States — which, since the retrocession of the county of Alexandria to the State of Virginia by the act of Congress of July 9, 1846, c. 35, (9 Stat. 35,) is the whole of the District of Columbia — and, in § 11, provided for the appointment of " such number of discreet persons to be justices of the peace" in the District of Columbia as the President should think expedient,

who should continue in office five years, and who should "in all matters civil and criminal, and in whatever relates to the conservation of the peace, have all the powers vested in, and shall perform all the duties required of, justices of the peace, as individual magistrates, by the laws hereinbefore continued in force in those parts of said District for which they shall have been respectively appointed; and they shall have cognizance in-personal demands of the value of twenty dollars, exclusive of costs; which sum they shall not exceed, any law to the contrary notwithstanding." 2 Stat. 104, 107.

In quoting the provisions of subsequent acts of Congress, the reënactments of them in the corresponding sections of the Revised Statutes of the District of Columbia will be referred to in brackets.

On March 1, 1823, Congress took up the subject in the act of 1823, c. 24, entitled "An act to extend the jurisdiction of justices of the peace in the recovery of debts in the District of Columbia." 3 Stat. 743.

The first section of that act gave to any one justice of the peace, of the county wherein the defendant resided, jurisdiction to try, hear and determine "all cases where the real debt or damages do not exceed the sum of fifty dollars, exclusive of costs," "and, upon full hearing of the allegations and evidence of both parties, to give judgment, according to the laws existing in the said District of Columbia, and the equity and right of the matter, in the same manner and under the same rules and regulations, to all intents and purposes, as such justices of the peace are now authorized and empowered to do when the debt and damages do not exceed the sum of twenty dollars, exclusive of costs." [Rev. Stat. D. C. §§ 997, 1006.] And by section 6, the jurisdiction of justices of the peace up to fifty dollars was made exclusive. [Rev. Stat. D. C. § 769.] The reference in section 1 was evidently to the act of Congress of February 27, 1801, § 11, above quoted; and sections 1 and 6 of the act of 1823 followed, as to jurisdictional amount, the statute of Maryland of 1809, c. 76, §§ 1, 6.

Sections 3 and 4 of the act of Congress of 1823 made it the duty of every justice of the peace to keep a docket con-

taining a record of his proceedings, and subjected him to damages to any person injured by his neglect to keep one. [Rev. Stat. D. C. §§ 1000, 1001.] Those provisions were evidently taken from the statute of Maryland of 1809, c. 76, §§ 4, 5. But they never were considered, either in the State of Maryland or in the District of Columbia, as making a justice of the peace a court of record.

By section 7 of the act of Congress of 1823, "in all cases where the debt or demand doth exceed the sum of five dollars, and either plaintiff or defendant shall think him or herself aggrieved by the judgment of any justice of the peace, he or she shall be at liberty to appeal to the next Circuit Court in the county in which the said judgment shall have been rendered, before the judges thereof, who are hereby, upon the petition of the appellant, in a summary way, empowered and directed to hear the allegations and proofs of both parties, and determine upon the same according to law, and the equity and right of the matter;" "and either of the said parties may demand a trial by jury, or leave the cause to be determined by the court, at their election." [Rev. Stat. D. C. §§ 1027, 775, 776.] These provisions (increasing the requisite sum, however, from twenty shillings, or two and two thirds dollars, to five dollars) were evidently copied from the statute of Maryland of 1791, c. 68, § 4, above cited; and the provision of § 5 of that statute, which required the appellant to give bond with sureties to pay, if the judgment should be affirmed, as well the sum and costs adjudged by the justice of the peace, as also those awarded by the appellate court, was not repealed or modified by the act of Congress of 1823, and appears to have been considered as still in force in the District of Columbia. *Butt* v. *Stinger*, (1832) 4 Cranch C. C. 252.

The same act of 1823, for the first time in the legislation of Congress, provided that actions might be tried by a jury before a justice of the peace, as follows:

"SEC. 15. In every action to be brought by virtue of this act, where the sum demanded shall exceed twenty dollars, it shall be lawful for either of the parties to the suit, after issue joined, and before the justice shall proceed to inquire into the

merits of the cause, to demand of the said justice that such action be tried by a jury; and upon said demand the said justice is hereby required to issue a *venire* under his hand and seal, directed to any constable of the county where said cause is to be tried, commanding him to summon twelve jurors to be and appear before the justice issuing such *venire*, at such time and place as shall be therein expressed; and the jurors thus summoned shall possess the qualifications, and be subject to the exceptions, now existing by law in the District of Columbia.

"SEC. 16. If any of the persons so summoned and returned as jurors shall not appear, or be challenged and set aside, the justice before whom said cause is to be tried shall direct the constable to summon and return forthwith a *tales*, each of whom shall be subject to the same exceptions as the jurors aforesaid, so as to make up the number of twelve, after all causes of challenge are disposed of by the justice.; and the said twelve persons shall be the jury who shall try the cause, each of whom shall be sworn by the justice well and truly to try the matter in difference between the parties, and a true verdict to give, according to evidence; and the said jury, being sworn, shall sit together, and hear the proofs and allegations of the parties, in public, and when the same is gone through with, the justice shall administer to the constable the following oath, viz.: 'You do swear, that you will keep this jury together in some private room, without meat or drink, except water; that you will not suffer any person to speak to them, nor will you speak to them yourself, unless by order of the justice, until they have agreed on their verdict.' And when the jurors have agreed on their verdict, they shall deliver the same publicly to the justice, who is hereby required to give judgment forthwith thereon; and the said justice is hereby authorized to issue execution on said judgment, in the manner, and under the limitations, hereinbefore directed." 3 Stat. 746. [Rev. Stat. D. C. §§ 1009–1017.]

These sections, providing for a trial by a jury before the justice of the peace, would appear, from their position in the act, to have been added, by an afterthought, to the scheme of the earlier sections, derived from the legislation of Maryland,

and providing for a trial without any jury before a justice of
the peace, and for a trial by jury, if demanded by either party,
in an appellate court; and were evidently taken, in great part
*verbatim*, from the twelfth section of the statute of New York
of 1801, c. 165, (which gave justices of the peace jurisdiction
of actions in which the debt or damages did not exceed
twenty-five dollars,) as modified by the twenty-second section
of the statute of New York of 1818, c. 94, which extended
their civil jurisdiction to fifty dollars. The material parts of
both those statutes are copied, for convenience of comparison,
in the margin.[1]

---

[1] " In every action to be brought by virtue of this act, it shall be lawful
for either.of the parties to the suit, or the attorney of either of them, after
issue joined, and before the court shall proceed to inquire into the merits of
the cause, to demand of the said court that such action be tried by a jury;
and upon such demand the said justice holding such court is hereby required
to issue a *venire*, directed to any constable of the city or town where the said
cause is to be tried, commanding him to summon twelve good and lawful
men, being freeholders or freemen of such city, or being freeholders of such
town, where said cause is to be tried, and who shall be in nowise of kin to
the plaintiff or defendant, nor interested in such suit, to be and appear be-
fore such justice issuing such *venire*, at such time and place as shall be ex-
pressed in such *venire*, to make a jury for trial of the action between the
parties mentioned in the said *venire*." [It is then provided that the names
of the jurors so summoned shall be written on separate papers and put into
a box.] " And on the trial of such cause such justice, or such indifferent
.person as he shall appoint for that purpose, shall draw out six of the said
papers one after another; and if any of the persons whose names shall be
so drawn shall not appear, or shall be challenged and set aside, then such
further number thereof shall be drawn as shall make up the number of six
who do appear, after all legal causes of challenge allowed by the said jus-
tice, .unless'the said parties agree that the said constable shall summon six
men at his discretion; and the said six persons so first drawn and appear-
ing and approved by the court as indifferent, shall be the jury who shall
try the cause, to each of whom the said justice shall administer the follow-
ing oath: 'You do swear in the presence of Almighty God, that you will
well and truly try the matter in difference between —— plaintiff and ——
defendant, and a true verdict will give according to evidence.' And after the
said jury have taken the oath aforesaid, they shall sit together, and hear the
several proofs and allegations of the parties, which shall be delivered in
public in their presence." [Provision is then made for the form of oath to
be administered to witnesses.] " And after hearing the proofs and allega-
tions, the jury shall be kept together in some convenient place until they

The provisions of the New York statute of 1801, (copied in the margin,) were reënacted, almost word for word, in the statutes of that State of 1808, c. 204, § 9, and of 1813, c. 53, § 9.

The New York statutes of 1801, 1808 and 1813, indeed, differed from the act of Congress of 1823, in giving a justice of the peace civil jurisdiction up to twenty-five dollars only; in authorizing every action " brought by virtue of this act," without restriction of amount, to be tried by a jury before a justice of the peace; in providing for a jury of six, instead of a jury of twelve men; and in the mode of selecting the jury; but were construed to authorize the justice of the peace (as the act of Congress of 1823 afterwards did in terms) to award a *tales* in case of a default of the jurors summoned on the *venire*.    Zeely v. *Yansen*, (1807) 2 Johns. 386.

The New York statute of 1818, however, like the act of Congress of 1823, extended the civil jurisdiction of a justice

---

all agree upon a verdict, and for which purpose a constable shall be sworn, and to whom the said justice shall administer the following oath, viz.: ' You do swear in the presence of Almighty God, that you will, to the utmost of your ability, keep every person sworn on this inquest together in some private and convenient place, without meat or drink, except water; you will not suffer any person to speak to them, nor speak to them yourself, unless by order of the justice, unless it be to ask them whether they have agreed on their verdict, until they have agreed on their verdict.' And when the jurors have agreed on their verdict, they shall deliver the same to the justice in the same court, who is hereby required to give judgment thereupon, and to award execution in manner hereafter directed."   N. Y. Stat. 1801, c. 165, § 12.

" In every action to be brought by virtue of this act, wherein the sum or balance due, or thing demanded, shall exceed twenty-five dollars, if either of the parties, the agent or attorney of either of them, after issue joined, and before the court shall proceed to inquire into the merits of the cause, shall demand of the court that such action be tried by a jury, and that such jury shall consist of twelve men, the *venire* to be issued shall in every such case require twenty good and lawful men to be summoned as jurors, and the jury for the trial of every such issue shall in such cases consist of twelve men, instead of six, as in other cases of trial before a justice; and the provisions in the ninth and tenth sections of the act above mentioned [of 1813, c. 53, reënacting the statute of 1801, c. 165, §§ 12, 13,] shall be followed, and shall be deemed to apply in every other respect." N. Y. Stat. 1818, c. 94, § 22.

of the peace to fifty dollars, and (in the section copied in the margin)‘ provided for a trial by a jury of twelve men before the justice of the peace, although it differed from the act of Congress in allowing such a trial to be had only when the sum demanded exceeded twenty-five dollars, whereas the act of Congress allowed it whenever the sum demanded exceeded twenty dollars.

The New York statute of 1801 also, in its first section, differed from the act of Congress, by expressly authorizing a justice of the peace to hold a court, and vesting him with all the powers of a court of record ; and, in the twelfth section, by not requiring the justice of the peace to give judgment "forthwith" upon the verdict of the jury.

Yet under that statute it was held by the Supreme Court of the State of New York, in *per curiam* opinions, doubtless delivered by Chancellor (then Chief Justice) Kent, and, before the passage of the act of Congress of 1823, was understood to be settled law in that State, that upon a trial by a jury before a justice of the peace, (differing in these respects from a trial by jury in a superior court,) the jury were to decide both the law and the facts, and the justice was bound to render judgment, as a thing of course, upon the verdict of the jury, and had no authority to arrest the judgment or to order a new trial.  *Felter* v. *Mulliner*, (1807) 2 Johns. 181 ; *M'Neil* v. *Scoffield*, (1808) 3 Johns. 436 ; *Hess* v. *Beekman*, (1814) 11 Johns. 457 ; Cowen's Justice of the Peace, (1st ed. 1821) 541, 544.

By a familiar canon of interpretation, heretofore applied by this court whenever Congress, in legislating for the District of Columbia, has borrowed from the statutes of a State provisions which had received in that State a known and settled construction before their enactment by Congress, that construction must be deemed to have been adopted by Congress together with the text which it expounded, and the provisions must be construed as they were understood at the time in the State.  *Metropolitan Railroad* v. *Moore*, (1887) 121 U. S. 558, 572 ; *Willis* v. *Eastern Trust Co.*, (1898) 169 U. S. 295, 307, 308.

VII. The questions of the validity and the effect of the act of Congress of 1823 then present themselves in this aspect:

The Seventh Amendment to the Constitution of the United States secures to either party to every suit at law, in which the value in controversy exceeds twenty dollars, the right of trial by jury; and forbids any such suit, in which there has once been a trial by jury, within the sense of the common law and of the Constitution, to be tried anew upon the facts in any court of the United States.

Congress, when enlarging, by the act of 1823, the exclusive original jurisdiction of justices of the peace in the District of Columbia from twenty to fifty dollars, manifestly intended that the dictates of the Constitution should be fully carried out, in letter and spirit. With this object in view, Congress first enacted that "in all cases" before a justice of the peace, in which the demand exceeded five dollars, either the plaintiff or the defendant should have a right to appeal from the judgment of the justice of the peace to the Circuit Court of the United States, and either of the parties might elect to have "a trial by jury" in that court. Congress also, by way of additional precaution, further enacted that every case, in which the sum demanded exceeded twenty dollars, should, if either party so requested, "be tried by a jury" of twelve men before the justice of the peace.

In all acts of Congress regulating judicial proceedings, the very word "appeal," unless restricted by the context, indicates that the facts, as well as the law, involved in the judgment below, may be reviewed in the appellate court. *Wiscart* v. *Dauchy*, (1796) 3 Dall. 321, 327; *In re Neagle*, (1890) 135 U. S. 1, 42; *Dower* v. *Richards*, (1894) 151 U. S. 658, 663, 664.

By section 7 of the act of 1823, the right of appeal to a court of record was expressly given "in all cases where the debt or demand doth exceed the sum of five dollars, and either plaintiff or defendant shall think him or herself aggrieved by the judgment of any justice of the peace." The words "in all cases," in their natural meaning, include cases which have been tried by a jury before the justice of the

peace, as well as those tried by him without a jury; and we perceive no necessity and no reason for restricting their application to the latter class of cases, and thereby allowing the fact, that upon the demand of one party the case has been tried by a jury before the justice of the peace, to prevent the other party from appealing to a court of record and obtaining a trial by jury in that court.

Neither the direction of section 1, that the justice of the peace should give judgment "according to the laws existing in the District of Columbia, and the equity and right of the matter," nor the similar direction of section 7, that the case should be determined on appeal "according to law, and the equity and right of the matter," can reasonably be construed as conferring chancery jurisdiction, either upon the justice of the peace, or upon the appellate court, or as substituting the rules of technical equity for the rules of law.

The trial by jury, allowed by the seventh section of the act, in a court of record, in the presence of a judge having the usual powers of superintending the course of the trial, instructing the jury on the law and advising them on the facts, and setting aside their verdict if in his opinion against the law or the evidence, was undoubtedly a trial by jury, in the sense of the common law, and of the Seventh Amendment to the Constitution.

But a trial by a jury before a justice of the peace, pursuant to sections 15 and 16 of the act, was of quite a different character. Congress, in regulating this matter, might doubtless allow cases within the original jurisdiction of a justice of the peace to be tried and decided in the first instance by any specified number of persons in his presence. But such persons, even if required to be twelve in number, and called a jury, were rather in the nature of special commissioners or referees. A justice of the peace, having no other powers than those conferred by Congress on such an officer in the District of Columbia, was not, properly speaking, a judge, or his tribunal a court; least of all, a court of record. The proceedings before him were not according to the course of the common law; his authority was created and defined by, and

rested upon, the acts of Congress only. The act of 1823, in permitting cases before him to be tried by jury, did not require him to superintend the course of the trial or to instruct the jury in matter of law; nor did it authorize him, upon the return of their verdict, to arrest judgment upon it, or to set it aside, for any cause whatever; but made it his duty to enter judgment upon it forthwith, as a thing of course. A body of men, so free from judicial control, was not a common law jury; nor was a trial by them a trial by jury, within the meaning of the Seventh Amendment to the Constitution. It was no more a jury, in the constitutional sense, than it would have been, if it had consisted, as has been more usual in statutes authorizing trials by a jury before a justice of the peace, of less than twelve men.

There was nothing, therefore, either in the Constitution of the United States, or in the act of Congress, to prevent facts once tried by such a jury before the justice of the peace from being tried anew by a constitutional jury' in the appellate court.

VIII. The majority of the Court of Appeals, in the case at bar, in holding that no appeal lay from a judgment entered by a justice of the peace on a verdict in the District of Columbia, appears to have been much influenced by the practice, which it declared to have prevailed in the District for seventy years, in accordance with decisions made by the Circuit Court of the United States of the District of Columbia soon after the passage of the act of Congress of 1823. But the reasons assigned for those decisions are unsatisfactory and inconclusive.

Such decisions, indeed, were made by the Circuit Court in several early cases. *Davidson* v. *Burr*, (1824) 2 Cranch C. C. 515; *Maddox* v. *Stewart*, (1824) 2 Cranch C. C. 523; *Denny* v. *Queen*, (1827) 3 Cranch C. C. 217; *Smith* v. *Chase*, (1828) 3 Cranch C. C. 348. Yet the appellant in one of those cases, whose appeal had been dismissed as unauthorized by law, was notwithstanding held liable on his bond to prosecute the appeal. *Chase* v. *Smith*, (1830) 4 Cranch C. C. 90.

The decisions in question would appear, by the brief notes

of them in the reports of Chief Justice Cranch, to have proceeded upon the assumption that the trial before a justice of the peace, by a jury empanelled pursuant to the act of 1823, was a trial by jury within the meaning of the Seventh Amendment to the Constitution, and therefore the facts could not be tried· anew upon appeal. In *Smith* v. *Chase*, however, that learned judge (declaring that he spoke for himself only) delivered an elaborate opinion, in which he maintained the position that, upon the demand of a trial by a jury, the cause was taken entirely out of the hands of the justice of the peace; that he was obliged to summon and swear the jury, and to render judgment according to their verdict; that no authority was given to him to instruct the jury upon matter of law or of fact, or to set aside their verdict and grant a new trial; and that the jury were not bound by his opinion upon matter of law, but were to decide the law as well as the fact. 3 Cranch C. C. 351, 352. From these premises he inferred (by what train of reasoning does not clearly appear) that such a trial by a jury before the justice of the peace was a trial by jury within the meaning of the Seventh Amendment to the Constitution; that the facts so tried, therefore, could not be tried anew in an appellate court; and that no appeal lay in such a case. Curiously enough, that opinion, purporting to have been delivered at December term, 1828, refers to the opinion of this court in *Parsons* v. *Bedford*, 3 Pet. 446–448, which was not delivered until January term, 1830.

In 1863, all the powers and jurisdiction, previously possessed by the Circuit Court of the District, including the appellate jurisdiction from justices of the peace, were transferred by Congress to the Supreme Court of the District of Columbia. Act of March 3, 1863, c. 91, §§ 1, 3, 12; 12 Stat. 762–764. [Rev. Stat. D. C. §§ 760, 1027.]

The foregoing decisions of the Circuit Court were followed in the Supreme Court of the District at general term in 1873, without much discussion, in *Fitzgerald* v. *Leisman*, 3 McArthur, 6; and at special term· in 1896, by Justice Bradley in *Brightwood Railway* v. *O'Neal*, 24 Wash. Law Rep. 406, and by Justice Cox in the present case. *Capital Traction*

*Co.* v. *Hof*, 24 Wash. Law Rep. 646. But each of these two judges, while holding himself bound by the previous decisions of the courts of the District, expressed a clear and positive opinion that they were erroneous.

Apart from the inconsistencies in the opinions delivered in the courts of the District of Columbia, it is quite clear that the decisions of those courts, especially when they involve questions of the interpretation of the Constitution of the United States, and of the constitutionality and effect of acts of Congress, cannot be considered as establishing the law, or as relieving this court from the responsibility of exercising its own judgment. *Ex parte Wilson*, (1885) 114 U. S. 417, 425; *Andrews* v. *Hovey*, (1888) 124 U. S. 694, 717; *The J. E. Rumbell*, (1893) 148 U. S. 1, 17.

IX. The legislation of Congress since the act of 1823 has not changed the character of the office, or the nature of the powers, of the justices of the peace in the District of Columbia, or of the juries summoned to try cases before those justices. The principal changes have been by enlarging the limits of the civil jurisdiction of the justices of the peace, and by expressly requiring security on appeals from their judgments.

By the act of February 22, 1867, c. 63, § 1, (14 Stat. 401,) Congress enlarged the jurisdiction of justices of the peace in the District of Columbia to " all cases where the amount claimed to be due for debt or damages arising out of contracts, express or implied, or damages for wrongs or injuries to persons or property, does not exceed one hundred dollars, except in cases involving the title to real estate, actions to recover damages for assault, or assault and battery, or for malicious prosecution, or actions against justices of the peace or other officers for misconduct in office, or in actions for slander, verbal or written." [Rev. Stat. D. C. § 997.] And on the same day, Congress, by the act of 1867, c. 64, (14 Stat. 403,) provided that " no appeal shall be allowed from a judgment of a justice of the peace, unless the appellant, with sufficient surety or sureties, approved by the justice, enter into an undertaking to satisfy and pay all intervening damages and costs arising on the appeal;" and that, " when such

·undertaking has been entered into, the justice shall immedi-
ately file the original papers, including a copy of his docket
entries, in the office of the clerk of the Supreme Court of the
District of Columbia ; and thereupon, as soon as the appel-
lant shall have made the deposit for costs required by law,
or· obtained leave from one of the justices, or from the
court, to prosecute his appeal without a deposit, the clerk
shall docket the cause," and it should be proceeded with sub-
stantially in the manner prescribed by the act of Congress of
1823. [Rev. Stat. D. C. §§ 1027–1029, 774.]

In 1874, the provisions, above quoted, of the acts of 1823
and 1867, were reënacted (with hardly any change except by
subdividing and transposing sections) in the Revised Statutes
of the District of Columbia, at the places above referred to in
brackets.

By the act of February 19, 1895, c. 100, §§ 1, 2, justices of the
peace of the District of Columbia have been granted (with the
same exceptions as in the act of February 22, 1867, c. 63, also
excepting, however, actions for damages for breaches of promise
to marry, and not excepting actions for assault or for assault and
battery) exclusive original jurisdiction of " all civil pleas and
actions, including attachment and replevin, where the amount
claimed to be due or the value of the property sought to be
recovered does not exceed " one hundred dollars, and concur-
rent original jurisdiction with the Supreme Court of the Dis-
trict of Columbia, where it is more than one hundred and not
more than three hundred dollars ; " and where the sum claimed
exceeds twenty dollars, either party shall be entitled to a trial
by jury." And by § 3, " no appeal shall be allowed from the
judgment of a justice of the peace in any common law action,
unless the matter in demand in such ́action, or pleaded in set-
off thereto, shall exceed the sum of five dollars ; nor unless the
appellant, with sufficient surety approved by the justice, enters
into an undertaking to pay and satisfy whatever final judg-
ment may be recovered in the appellate court." 28 Stat. 668.

Under the act of 1895, as under the previous acts of Con-
gress, where the matter in controversy exceeds five dollars in
value, an appeal lies to a court of record from any judgment

of a justice of the peace, whether rendered upon a verdict or not, and either party may have a trial by a common law jury in the appellate court; and the trial by jury in that court is, and the trial before a justice of the peace is not, a trial by jury within the meaning of the Seventh Amendment to the Constitution.

The only question remaining to be considered is of the constitutionality of the provisions of the act of 1895, by which the civil jurisdiction of justices of the peace is extended to three hundred dollars, and either party, on appealing from the judgment of the justice of the peace to the Supreme Court of the District of Columbia, is required to enter into an undertaking to pay and satisfy whatever judgment may be rendered in that court.

For half a century and more, as has been seen, after the adoption of the earliest constitutions of the several States, their courts uniformly maintained the constitutionality of statutes more than doubling the pecuniary limit of the civil jurisdiction of justices of the peace as it stood before the adoption of constitutions declaring that trial by jury should be preserved inviolate, although those statutes made no provision for a trial by jury, except upon appeal from the judgment of the justice of the peace, and upon giving bond with surety to pay the judgment of the appellate court. And such appears to have been understood to be the law of Maryland and of the District of Columbia before and at the time of the passage of the act of Congress of 1823.

Legislation increasing the civil jurisdiction of justices of the peace to two or three hundred dollars, and requiring each appellant from the judgment of a justice of the peace to a court of record, in which a trial by jury may be had for the first time, to give security for the payment of the judgment of the court appealed to, has not generally been considered as unreasonably obstructing the right of trial by jury, as is shown by the numerous statutes cited in the margin,[1]

---

[1] ARKANSAS.  Digest 1894, §§ 4317, 4431, 4432.
    CALIFORNIA.  Code of Civil Procedure 1872, §§ 114, 974, 978.

from which it appears that the civil jurisdiction of justices of the peace has been increased-to three hundred dollars in Pennsylvania, Ohio, Michigan, Kansas, Arkansas, Colorado and California; to two hundred and fifty dollars in Missouri; and to two hundred dollars in New York, Indiana, Illinois, Wisconsin, Delaware, North Carolina, Mississippi and Texas; and that the appellant is required (at least when the appeal is to operate as a supersedeas) to enter into a bond or recognizance, not only to prosecute his appeal, but to pay the judgment of the appellate court, in all those States, except Pennsylvania; and in that State any corporation, except a municipal corporation, is required to give such a bond, but other appellants are required to give bond for the payment of costs only. And we have not been referred to a single decision in any of those States that holds such a statute to be unconstitutional in any respect.

The legislature, in distributing the judicial power between courts of record, on the one hand, and justices of the peace or other subordinate magistrates, on the other, with a view to prevent unnecessary delay and unreasonable expense, must have a considerable discretion, whenever in its opinion, be-

---

COLORADO. Rev. Stat. 1867, c. 50, §§ 1, 38,39; Gen. Laws 1877, §§ 1482, 1519, 1520; Gen. Stat. 1883, §§ 1924, 1979, 1980.

DELAWARE. Rev. Stat. 1893, c. 99, §§ 1, 25.

ILLINOIS. Rev. Stat. 1874, c. 79, §§ 13, 62; Starr & Curtis's Stat. 1896, c. 79, §§ 16, 115.

INDIANA. Rev. Stat. 1881, §§ 1433, 1500.

· KANSAS. Gen. Stat. 1868, c. 81, §§ 2, 121; Gen. Stat. 1897, c. 103, §§ 20, 188.

MICHIGAN. Rev. Stat. 1872, §§ 5249, 5433; Howell's Stat. 1882, §§ 6814, 7000.

MISSISSIPPI. Code 1892, §§ 2394, 82.

MISSOURI. · Rev. Stat. 1889, §§ 6122, 6328.

NEW YORK. Stat. 1861, c. 158; Rev. Stat. 1875, (6th ed.) pt. 3, tit. 2, § 56; tit. 4, § 53.

NORTH CAROLINA. Code 1883, §§ 834, 884.

OHIO. Rev. Stat. 1880, §§ 585, 6584.

PENNSYLVANIA. Stat. July 7, 1879, c. 211; Purdon's Digest, 1885, (11th ed.) Justice of the Peace, §§ 35, 99, 100.

·  TEXAS. Rev. Stat. 1879, §§ 1539, 1639; Rev. Stat. 1895, §§ 1568, 1670.

.  WISCONSIN. Rev. Stat. 1878, §§ 3572, 3756; Stat. 1898, §§ 3572, 3760.

cause of general increase in litigation, or other change of circumstances, the interest and convenience of the public require it, to enlarge within reasonable bounds the pecuniary amounts of the classes of claims entrusted in the first instance to the decision of justices of the peace, provided always the right of trial by jury is not taken away in any case in which it is secured by the Constitution.

Having regard to the principles and to the precedents applicable to this subject, we should not be warranted in declaring that the act of Congress of 1895 so unreasonably obstructs the right of trial by jury, that it must for this reason be held to be unconstitutional and void.

X. Upon the whole matter, our conclusion is, that Congress, in the exercise of its general and exclusive power of legislation over the District of Columbia, may provide for the trial of civil causes of moderate amount by a justice of the peace, or, in his presence, by a jury of twelve, or of any less number, allowing to either party, where the value in controversy exceeds twenty dollars, the right to appeal from the judgment of the justice of the peace to a court of record, and to have a trial by jury in that court; that Congress, in every case where the value in controversy exceeds five dollars, has authorized either party to appeal from the judgment of the justice of the peace, although entered upon the verdict of a jury, to the Supreme Court of the District of Columbia, and to have a trial by jury in that court; that the trial by a jury of twelve, as permitted by Congress to be had before a justice of the peace, is not, and the trial by jury in the appellate court is, a trial by jury, within the meaning of the common law, and of the Seventh Amendment to the Constitution; that therefore the trial of facts by a jury before the justice of the peace does not prevent those facts from being reëxamined by a jury in the appellate court; that the right of trial by jury in the appellate court is not unduly obstructed by the provisions enlarging the civil jurisdiction of justices of the peace to three hundred dollars, and requiring every appellant to give security to pay and satisfy the judgment of the appellate court; that the legislation of Congress upon the subject is in all respects consistent

with the Constitution of the United States; and that upon these grounds (which are substantially those taken by Chief Justice Alvey below) the judgment of the Court of Appeals, quashing the writ of certiorari to the justice of the peace, must be affirmed.

The effect of so affirming that judgment will be to leave the claim of Hof against the Capital Traction Company open to be tried by a jury before the justice of the peace, and, after his judgment upon their verdict, to be taken by appeal to the Supreme Court of the District of Columbia, and to be there tried by jury on the demand of either party.

*Judgment affirmed.*

MR. JUSTICE BREWER concurred in the judgment of affirmance, but dissented from so much of the opinion as upheld the validity of the provision of the act of Congress requiring every appellant from the judgment of a justice of the peace to give bond with surety for the payment of the judgment of the appellate court.

MR. JUSTICE BROWN did not sit in this case, or take any part in its decision.

---

In No. 114, METROPOLITAN RAILWAY COMPANY *v.* CHURCH, and No. 195, BRIGHTWOOD RAILWAY COMPANY *v.* O'NEAL, argued at the same time, the judgments of the Court of Appeals of the District of Columbia, quashing writs of certiorari to set aside proceedings of a justice of the peace under similar circumstances, are likewise

*Affirmed.*

*Mr. D. W. Baker* for Metropolitan Railway Co.   *Mr. Nathaniel Wilson* was on his brief.

*Mr. Ernest L. Schmidt* for Church.

*Mr. Henry P. Blair* and *Mr. Corcoran Thom,* for Brightwood Railway Co., submitted on their brief.

*Mr. Raymond A. Heiskell* and *Mr. M. J. Colbert* for O'Neal.